JAMES B. POSEY, Plaintiff in Error, *vs.* COMMISSIONERS OF HIGHWAYS, Defendants in Error.

*Opinion filed June 22, 1916.*

HIGHWAYS—*what establishes the boundaries of a highway by prescription.* Where there is a highway by prescription and upon petition for a survey of the road a surveyor is employed by the highway commissioners to locate its boundaries, which the surveyor proceeds to do with reference to the line of travel, the boundaries so located by him and accepted by the highway commissioners and the adjoining land owner must remain the boundaries of the highway until changed in the manner provided by law, upon a petition of land owners and a hearing by the commissioners.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Marion county; the Hon. JAMES C. McBRIDE, Judge, presiding.

KAGY & VANDERVORT, for plaintiff in error.

CHARLES H. HOLT, and W. G. WILSON, for defendants in error.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

Plaintiff in error is the owner of the west half of the southeast quarter of the northeast quarter, the west half of the northeast quarter of the southeast quarter and the northwest quarter of the southeast quarter, all in section 3 in Omega township, Marion county, Illinois. A road, hereinafter referred to as the north and south road, runs north

and south along the west line of the twenty-acre tract first above described.   Another road, which will be referred to as the east and west road, runs east and west near the quarter section line and between the two twenty-acre tracts above described and along the north line of the forty-acre tract. These two roads intersect at or near the southwest corner of the first twenty-acre tract above mentioned, which is the northwest corner of the second twenty-acre tract and the northeast corner of the forty-acre tract.   Plaintiff in error filed his bill in chancery in the circuit court of Marion county for an injunction to restrain the defendants in error, the commissioners of highways of said township, from removing fences and trees which were alleged to be upon his land adjoining the highways hereinafter described, and from prosecuting a suit at law against him to recover a penalty for alleged obstructions of said highways.   A demurrer to the bill was overruled.   Defendants in error answered, admitting that they had notified the complainant in the bill to remove his fences from the highways, and upon his failure so to do they had moved the fences and placed the same upon the land of complainant, and admitting that he afterwards replaced the fences on said highways and that they had caused a suit to be instituted against him for obstructing said public highways.   A replication was filed to the answer, and the cause was heard upon the bill, answer and replication and the evidence heard in open court. The court entered a decree granting the prayer of the bill as to the north and south road and enjoining the commissioners from interfering with the fences along the line of said road, but dismissed the bill for want of equity and denied the prayer thereof as to the east and west road and refused to enjoin the suit pending against complainant for obstructing the last mentioned road.   An appeal was taken to this court from the decree of the circuit court, but the cause was transferred to the Appellate Court for the Fourth District for the reason that no freehold was involved.   On

hearing, the decree was affirmed by the Appellate Court, and on petition of plaintiff in error the cause has been removed to this court by writ of *certiorari.*

It appears from the evidence there has been a road traveled east and west along this route for some fifty or sixty years. There is no record that it was ever dedicated or laid out, and if its existence had been questioned it could only be held to be a highway by user or prescription. It was well traveled, however, and the line of travel was well defined. It ran through a timbered country, and the beaten track shifted from side to side to avoid stumps and trees. In 1897 a petition was filed with the commissioners of highways to have said road surveyed, and the county surveyor was employed by the commissioners to survey and fix the boundaries of said road and also of the north and south road. He made a survey of the east and west road pursuant to said employment and set stakes at intervals of twenty feet on each side of the center line to mark the north and south boundaries of a highway forty feet in width. The road thus established included within its boundaries what had been traveled as the old road. The plaintiff in error and others were present when this survey and location of the road were made by Meredith, in 1897, and the lines of the road as laid out and bounded by him were accepted by the commissioners of highways and others interested as establishing the boundaries of the road. The center line of the road as surveyed by Meredith commenced at the east side of section 3, about on the east and west quarter section line, and thence ran west, angling slightly north, as shown by the plat introduced in evidence. Fences were built by plaintiff in error substantially on the line of the road as indicated by the Meredith survey, and bridges were built at different places on the road. In March, 1911, the commissioners of highways engaged T. W. Warner, county surveyor, to locate the line of this road, and he did so by running the line straight through east and west along the

quarter section line as the middle of the road. Generally speaking, the road thus laid out is south of the road as located by the Meredith survey, being twelve feet and ten inches south at its intersection with the north and south road and twenty-four feet and four inches south at the west end of the road. The greater part of the road as established by the Warner survey, particularly at the west end, lies south of the line of travel, and at some places the beaten track is north and outside of the road as fixed by Warner. After the Warner survey was made the road commissioners tore out the fence of plaintiff in error on the south side of the road and threw it back on his land south of the south line as shown by the Warner survey, chopped down trees and graded the road according to the Warner survey and moved some bridges south of the former location.

The principal question to be determined by the assignments of error is whether the boundaries of the road as located by the Meredith survey or the boundaries as located by the Warner survey are to be taken as the true boundaries of the highway in controversy. There was some evidence that in making the Meredith survey Meredith was directed to follow the quarter section line as the center of the road, and there was other evidence, including that of one of the road commissioners who employed him, that he was not to follow the quarter section line but was merely to ascertain and locate the road. As has been said, this road was never established by dedication but by prescription. It had been traveled for many years,—so long, in fact, that the public had acquired the right to use the road as a public highway. Where a road is thus acquired or a highway is thus established, the boundaries of that highway can only be established by taking the route of such road as actually traveled and used, and we infer from the record that this was done, and, in fact, was the only thing that could be done at the time of the Meredith survey. The public were entitled to a road, and the public officials having supervi-

274 — 3

sion of such matters,—the commissioners of highways,—had the right, and it was their duty on a petition being filed with them for that purpose, to have said road surveyed and the boundaries established according to law, and this was done by the Meredith survey in 1897. In making this survey and establishing the boundaries of the road, reference was undoubtedly had to the road as traveled. It was not fenced throughout its entire length but was fenced a portion of the way on the south side, and the south line of the road as established by Meredith was about where the fences were built by plaintiff in error and re-built by him from time to time, and which were removed by defendants in error after the Warner survey. The most natural point to be taken by Meredith in establishing this road was the intersection of the road in question with the north and south road, which he also surveyed. If anything would show the location of these roads as established by user or prescription it would be the intersection point of the two roads. On the whole, we think there can be no question but that the boundaries of the road in controversy as fixed by Meredith, and which are shown by the plat of his survey, constituted its true boundaries, and the public are estopped from claiming that the road ran upon a different line from the survey. (*Gentleman* v. *Soule,* 32 Ill. 271.) The road being thus established it could not be changed except in some manner provided by law. Neither the commissioners of highways nor anyone else have a right to alter, widen, vacate or lay out roads through the lands of others except in the manner provided by law, upon a petition of land owners and upon a hearing by the commissioners in the manner provided by the Road and Bridge law. The action of the commissioners of highways in this case amounted to an alteration of the road in controversy, which they had no right or authority to do in the manner they did. The Meredith survey established the boundaries of said road until the road was altered or re-located in the manner provided by law.

It was held by the court below that the plaintiff in error, by pointing out to the commissioners of highways on one occasion the south line of the road about where the south line was subsequently established by the Warner survey, was thereby estopped from claiming that such line was not the south boundary of the road. Such alleged action of the plaintiff in error is certainly totally at variance with his actions in this suit and is denied by him. He claims that he was trying to point out the boundaries of the road as established by the Meredith survey. He could not very well point out a line that had not been established. In any event, the exact line which he pointed out as in his opinion constituting the south boundary of the road is not shown by the evidence, and is altogether too indefinite and uncertain upon which to base an estoppel to prove the true boundaries of the road. He referred to a stump standing in the road at one place, but whether the line pointed out by him along this road was one foot or ten feet from the line of the Meredith survey or the line of the Warner survey is very uncertain. If the line subsequently established by the Warner survey had been definitely fixed and was visible and plaintiff in error had agreed to such line, and the commissioners, as a result of such action, had done something that would cause them or the public a loss or damage to undo, a different question would be presented, but it is very certain from the testimony of all the witnesses and from the protest made by plaintiff in error, together with his subsequent actions, that he never agreed or consented that the south line of the road was inside of his fence and garden, which the commissioners proceeded, without sufficient warrant or authority, to destroy.

For the reasons given, the judgments of the Appellate and circuit courts will be reversed and the cause remanded to the circuit court, with directions to enter a decree as to the east and west road described in the bill in accordance with the prayer of the bill of plaintiff in error.

*Reversed and remanded, with directions.*