Gentleman v. Soule.

---

WILLIAM GENTLEMAN

*v.*

LEWIS SOULE.

1. PUBLIC HIGHWAYS — *deviation from the original track, its effect upon an alleged prescriptive right.* Travel may slightly deviate from the thread of a road which is

32   271
124  242

32   271
36a  613

32   271
150  133
152  574
155  550

32   271
159  108
160  517

32   271
47a  270

32   271
184  218
184  320

being used, to avoid an obstruction, and still not change the road itself. But it is otherwise where the whole length of the road is abandoned for eight or nine years, and is not sufficiently traveled to prevent its becoming obstructed by the growth of weeds and brush. In such case there is not that continued user which is absolutely necessary to establish a prescriptive right.

2. SAME — *prescription, confined to a specific way.* The public cannot acquire a prescriptive right to pass over a tract of land generally, but it must be confined to a specific line or way.

3. SAME — *prescriptive right, within what time it can be acquired.* Twenty years is the shortest time within which the public can acquire a prescriptive right to use a road.

4. Nor can the time during which various and distinct lines of travel have been used, be so united as to make up the requisite time to establish a prescriptive right to any given single line of road.

5. SAME — *prescriptive right, how established.* The use of a road, to establish a prescriptive right, must be open, adverse and under claim of right.

6. SAME — DEDICATION, *by whom to be made.* A dedication of ground for a public highway can be made only by the owner. A mere squatter upon government land has no such power.

7. A trespasser, or even a tenant, cannot grant a valid easement over the land of the owner.

8. SAME — DEDICATION, *what constitutes — intention and acceptance.* To constitute a sufficient dedication there must be the intention to make it. This intention may be manifested in writing, by declarations, or by acts.

9. There must also be an acceptance; and where the public are the donees of the easement, that is usually manifested by acts, such as taking charge of, and repairing the highway, by the proper county or town authorities.

10. SURVEY AND PLATTING OF ROAD — *its effect.* The mere survey and platting of a road by a county surveyor, under the direction of highway commissioners, does not have the effect to establish it as a public highway; such a proceeding is designed only to ascertain the courses and distances of a road claimed to be already established, and leaves the proof of its existence precisely as it was before.

11. ESTOPPEL — *survey and platting of road.* Such proceeding has, however, the effect to estop the public from claiming that the road runs upon a different line from the survey.

WRIT OF ERROR to the Circuit Court of Kendall county; the Hon. MADISON E. HOLLISTER, Judge, presiding.

This was an action of debt, commenced before a justice of the peace in the county of La Salle, by Lewis Soule against William Gentleman, to recover the penalty for obstructing a public

road in that county, under the provisions of the act of 22d of June, 1852. Sess. acts, p. 176; Scates' Comp. 574. The trial before the justice resulted in a judgment against the defendant below, who appealed therefrom to the Circuit Court of La Salle county, from which the cause was removed, upon change of venue, to the Circuit Court of Kendall county.

That Gentleman erected the obstruction complained of is conceded, but he denies that the place in which it was erected was a public highway. Soule, who seeks to recover the penalty, insists it was a public highway, and sought to establish that fact, *first*, by prescription, and *second*, by a dedication, making no claim that the road was ever established under the statute.

The principal question arising upon the record is, whether the testimony establishes the road in which the obstruction was placed, as a public highway, either by prescription or dedication.

Upon the first proposition, that the road was a public highway by prescription, the case is this: It appears that as early as 1825 a road was in use, running from what is known as Brown's ford, on the Illinois river, in the county of La Salle, to a certain point on the Illinois Timber road, and running across or over the south-west and north-west fractional quarters of section eighteen, and the south-west fractional quarter of section seven, in township thirty-three, north of range four.

This road was traveled by the public until after the year 1835, and finally became entirely obstructed and abandoned, growing up in weeds and brush.

From time to time, other and distinct tracks to the ford were opened and traveled, each being used for a time, and in its turn, abandoned for a different one. The road in which the particular obstruction complained of, was placed, was in use only some four or five years.

These different roads were not mere deviations from the original track, to avoid obstructions, but were totally distinct tracks, having no point in common, except as they converged at the ford.

The facts relied upon to establish a dedication of the road to the use of the public, are these: Richey, in a conversation

35

with one Brown and his wife, who were living on one of the tracts mentioned, said to Brown, "What in the name of sense are you going to stay here for?" To this Mrs. Brown replied, "Oh, we'll keep a hotel, and make some dimes off the road." And in another conversation, Brown said to Dimmick, one of the witnesses, in speaking of one of the tracts, that there would always be a road there, and pointed out a patch where he intended to plant an orchard, and said the road would run by it.

At the time of these conversations the lands mentioned belonged to the government of the United States, Brown having no other claim or title to them than that of a mere squatter. Dimmick afterwards purchased the land from the government, and sold it to Gentleman, the plaintiff in error, who was the owner of the land at the time he erected a fence upon it, across the road, which was the obstruction complained of.

On the trial the plaintiff below introduced in evidence, a copy of certain proceedings in relation to the platting and survey of this road, as follows:

STATE OF ILLINOIS, LA 'SALLE COUNTY, }
TOWN OF GRAND RAPIDS.

Whereas, It appearing to the commissioners of highways, in and for said town, that a road or highway, leading from a point near the house of William Gentleman, on section eighteen, in township No. thirty-three, north of range No. five of the third principal meridian, in a southerly direction, through part of said section eighteen and section No. seven, in the same township and range, to a ford in the Illinois river, known as the Widow Brown's ford, has been used for such highway or road for twenty years; and it further appears to said commissioners of highways that said road or highway is still, and at this time, is used as such road or highway, has never been recorded. Now, therefore, we, the undersigned, commissioners of highways in and for said town of Grand Rapids, do order that said road or highway be ascertained, described and entered of record in the clerk's office of said town, according to a survey which has been made under our direction, by W. F. Witmore, county surveyor of La Salle county, as follows, to wit: commencing at a point on

said section eighteen, from which the south-west corner of Wm. Gentleman's barn bears north sixty-four (64½°) degrees east 121 links, and running from said point north fifteen degrees (15°) west, two hundred and nineteen (219) links ; from thence north five (5°) degrees east, 719 links, to a point from which a dead black oak, fifteen inches in diameter, bears south five (5°) degrees east forty-five (45) links ; from thence north fourteen (14°) degrees east 284 links, to a point from which a black oak tree, twenty-four inches in diameter, bears south fifty-seven (57°) degrees west 18¼ links ; from thence north five and a-half (5½°) degrees east five hundred and sixty-four (564) links, to a point from which a white oak tree, eighteen inches in diameter, bears north fifty-three and one-half (53½°) degrees west sixteen links (16) ; from thence north nine (9°) degrees west (644) six hundred and forty-four links ; from thence north seven (7°) degrees west six hundred and sixty-eight (668) links, to a point on a hillside, from which a black oak tree, twelve inches in diameter, bears north sixty-seven (67°) degrees west forty links, and a burr oak tree, twelve inches in diameter, bears north seventy-six (76°) degrees east seventy-two links (72) ; from thence north fifty-two (52°) degrees west, down the bluff, three hundred and five links (305), to a point from which a burr oak tree (10) ten inches in diameter, bears north fifty-one (51°) degrees east eighteen (18) links ; from thence north three (3°) degrees west twenty-five hundred and fifty (2550) links, to the Illinois river, at the ford known as the Widow Brown's ford. And we do further order that the line of said survey be the center of said road or highway, and that the same be, and is hereby declared to be, a public highway of the width of four rods.   Given under our hands this 20th day of February, 1860.

ABLE CAMPBELL,
HENRY BROOK,
RANSOM PALMER,
*Commissioners of Highways for the town of Grand Rapids.*

*To the Commissioner of Highways in and for the Town of Grand Rapids, La Salle County and State of Illinois :*

I hereby report to your Hon. Body, that on the third day of December, A. D. 1860, under your instructions, I made the

following survey for the purpose of locating a road running from a point near the house of William Gentleman, on section eighteen in Township Thirty-three, north of range No. four, east of the third principal meridian, in a northerly direction through part of said section eighteen and section No. seven in the same township and range, to a ford in the Illinois river known as the Widow Brown's ford, to wit : I commenced at a point on said section eighteen, from which the south-west corner of William Gentleman's barn bears north, sixty-four and one half deg. (64½°) east, one hundred and twenty-one links; and run from said point north, fifteen (15°) degrees west, two hundred and nineteen (219) ; from thence north five (5°) degrees east, seven hundred and nineteen (719) links to a point from which a dead black oak, fifteen inches in diameter, bears south, five (5°) degrees east, forty-five (45) links ; from thence north, fourteen (14°) degrees east, two hundred and eighty-four links (284) to a point from which a black oak tree, twenty-four inches in diameter, bears south, fifty-seven degrees (57°) west, eighteen and one half links (18½) ; from thence north, five and one half (5½°) east, five hundred and sixty-four links (564) to a point from which a white oak tree eighteen inches in diameter bears north, fifty-three and one half (53½°) degrees west, sixteen links (16) ; from thence north (9°) nine degrees west, six hundred and forty-four (644) links; from thence north (7°) seven degrees west, six hundred and sixty-eight, to a point on the hill-side, from which a black oak tree, twelve inches in diameter, bears north, sixty-seven (67°) west, forty links ; and a burr oak, twelve inches in diameter, bears north, seventy-six degrees east, seventy-two links ; from thence north, fifty-two degrees west, down the bluff three hundred and five links, to a point from which a burr oak tree, ten inches in diameter, bears south, fifty-one degrees east, eighteen links ; from thence north, three degrees west, twenty-five hundred and fifty links, to the Illinois river, at the ford known as the Widow Brown's ford. I do hereby certify that the plat attached hereto is a correct representation of said survey.

OTTAWA, Dec. 5th, 1860.

W. F. WITMORE,
*County Surveyor of La Salle County, Illinois.*

Copy of surveyor's plat of road to Brown's ford, filed in my office, Feb. 25th, 1861.

J. W. PORTER, *Town Clerk.*

STATE OF ILLINOIS, LA SALLE COUNTY, }
TOWN OF GRAND RAPIDS.

I, Daniel S. Ebersoll, clerk of said town of Grand Rapids, do hereby certify that the above is a true and correct copy of all the papers and records in my office in relation to the road therein mentioned.

Given under my hand and seal, this 20th January, 1862.

D. S. EBERSOLL, *Town Clerk.*

The jury having found the defendant guilty as charged, he moved for a new trial, which was denied, and judgment was entered against him in pursuance of the verdict. He thereupon sued out this writ of error.

Messrs. GLOVER, COOK & CAMPBELL, for the plaintiff in error.

Messrs. GRAY, AVERY & BUSHNELL, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The overruling of the motion for a new trial by the court below is assigned for error, and the only question presented by this record is one of fact. And it is whether the evidence establishes the charge, that plaintiff in error obstructed a public highway as alleged in the complaint. That he erected the obstruction, there is no dispute, but it is denied that it was in a public highway. Defendant in error makes no claim that such a road was ever established under the statute; but he does contend, that the evidence establishes a public road, both by prescription and by dedication. On the first of these questions, as might be expected, in tracing the history of such a transaction through a length of time, the evidence is, to some extent, inconclusive and contradictory.

We think, after a careful examination of all the evidence, that it fails to establish a prescriptive right in the public, to use the portion of the road in controversy as a public highway.

The evidence fails to show that there was a continuous use of this track, by public travel, for twenty years. It appears there were several lines of travel, all converging to the ford on the Illinois river, but they were too far separated from each other to constitute but one road. They do not seem to be mere departures from one common track, to avoid a temporary obstruction. They seem to have been separate and independent, having no portion or even a point in common, except the ford to which they all converged. It is true, that travel may slightly deviate from the thread of the road to avoid an obstruction, at any point in the road, and still not change the road itself. But it is otherwise, when the whole length of the road is abandoned for eight or nine years, and is not sufficiently traveled to prevent its becoming obstructed by the growth of weeds and brush. In such a case, there is not that continued user which is absolutely necessary to establish a prescriptive right.

Pembroke testifies, and he seems to have had ample means of being informed of all the circumstances during the time of which he speaks, that the travel was cut off from this road for eleven or twelve years. That the travel on the road in controversy, had only continued four or five years. In this he is substantially supported by the evidence of Lewis, Trumbo, James Brown, Hardin and others. It also appears that plaintiff in error built a barn, and inclosed a lot and calf pasture, over the old track that was traveled in 1835, as much as twenty years before the trial. On the contrary, the witnesses of defendant in error only speak in general terms, that the travel was about where the road now runs.

A prescriptive right cannot be acquired to pass over a tract of land generally, but it must be confined to a specific line or way. 3 Kent, 419. The public can no more claim a prescriptive right to pass, at any and all places, over a man's land, than can an individual. The right must be confined to a definite, certain and precise line. Here this was not the case, as there were several different lines of travel, none of them continuing in constant use for twenty years, the shortest period

within which the right can be acquired. Nor can the travel over these various lines be so united as to make out the requisite length of time. To have that effect it must be confined to one track, and for the requisite period. It must also be open, adverse, and under claim of right. In this case, all of these requisites seem to be wanting, to establish the prescription.

The next question is, whether the evidence proves a dedication. It is insisted that Brown, in 1831, made a dedication of the road to the public. It was attempted to be proved from a conversation, in which Richey asked him why he had settled on the land he then occupied, when Mrs. Brown replied that they were going to keep a hotel and make some dimes by the road. And from Brown's having said to Dimmick, in 1834, that there would always be a road at that place, and pointed out the place where he intended to plant an orchard, and said the road would run by it. The land at that time belonged to the government, and Brown had no title to, or interest in it, but was only occupying it as a squatter. Dimmick afterwards entered it, and sold it to plaintiff in error. At the time Brown made these declarations, even if they were sufficient evidence to make a dedication, he was not the owner, and had no right to dispose of, or encumber the land. He could not confer any more or better right than he possessed. It would be unheard of, for a trespasser, or even a tenant, to exercise the right of granting a valid easement over the land of the owner. This evidence fails to establish a dedication by Brown.

There is no evidence tending to show that plaintiff in error ever dedicated the road, or recognized its legal existence. He obstructed it with his barn and fences, and declared he intended to inclose it with a fence as soon as he became able, and we discover in the evidence no declaration, or act, that shows such a design on his part, but the contrary.

To constitute a sufficient dedication, there must be the intention to make it, and also an acceptance. This intention on the part of the owner may be manifested in writing, by declara-

tions, or by acts. But the intention must be unequivocal, and satisfactorily proven; and the acceptance must also appear, and when the public are the donees of the easement, that is usually manifested by acts, such as taking charge of and repairing the highway, by the proper county or town authorities. Plaintiff in error, by none of these modes, manifested a design of making a dedication of the right of way to the public, and if he had, it does not appear to have been accepted. The proper authorities do not seem to have even repaired the road, nor does any other act seem to have been done by them, which, in the slightest degree, indicated that they ever regarded this as a highway, until they caused it to be surveyed and platted, in 1851.

It was argued, however, that the survey and platting of this road, under the order of the highway commissioners, established it as a public highway. What the first order was does not appear. Whether it found this road to exist, or only that there was a road in that vicinity, or whether they directed the surveyor to ascertain if a road did exist, and if so, to find its locality, does not appear in the evidence. But if it did, it could not affect the rights of plaintiff in error. This was not a proceeding to establish a road, but only to ascertain the courses and distances of one claimed to be already established. This proceeding did not establish or prove anything, but that the commissioners claimed that a road existed where the survey was made. It left the proof of its existence precisely as it was before. It also had the further effect of estopping the public from claiming that the road run upon a different line from the survey. When its existence was questioned, it devolved upon the people to show that they had acquired the right in the place they claimed by the survey. It could not have been the intention of the legislature, when they authorized the public authorities to have such surveys made, to conclude the owner, in his absence, and without any means of being heard to controvert the claim of the public. Nor does the law give him the right of appeal. It does not declare that such a survey shall affect his rights, nor does it. Such a pro-

ceeding is *ex parte*, and without evidence, and is, consequently, not binding upon adverse interests.

From the whole evidence in the case we are of the opinion that it does not sustain the verdict, and that a new trial should have been granted, and that the judgment of the court below must be reversed, and the cause remanded.

