WILLIAM J. WARD

*v.*

MARIETTA E. WARD.

*Filed at Mt. Vernon June 21, 1882.*

1. DIVORCE—*"extreme and repeated cruelty,"* as a ground for divorce. It is difficult to define with precision what is and what is not extreme and repeated cruelty. The same act is not the same thing under all circumstances and to all persons. Necessarily each case must, to a large degree, be judged by itself.

2. As extreme and protracted suffering may be produced primarily by operating on the mind alone, threats of physical violence, and false charges of adultery, by a husband against his wife to her face, maliciously made, are competent evidence to prove cruelty, on a bill for divorce, and when they are accompanied or followed by acts of actual malicious physical violence, they seem to magnify the atrocity of the acts.

3. It seems that any willful misconduct of a husband which endangers the life or health of his wife,—which exposes her to bodily hazard and intolerable hardship, and renders cohabitation unsafe,—is extreme cruelty. To amount to such cruelty it is not necessary there should be many acts, and whenever force and violence, preceded by deliberate insult and abuse, have been once wantonly and without provocation used, the wife can hardly be considered safe.

4. On the trial of a bill for divorce brought by a wife, the proof showed four or five distinct assaults and batteries upon her by the husband, apparently without provocation, and in addition falsely charging her with a want of chastity, and almost constant insult and abuse within a period of three

years, terminating in their separation: *Held*, that the facts authorized a decree of divorce.

5. SAME—*of the allegations and proofs.* Literal proof of every allegation of a bill in chancery, as, on a bill for divorce as to cruelty, is not required. Substantial proof of the material allegations is sufficient.

6. EVIDENCE—*as to contents of a letter written by the witness.* On the trial of a suit for a divorce brought by a wife against her husband, her brother was called by her as a witness, and on the cross-examination the court refused to allow him to testify to the contents of a letter written by him to the defendant, though he was allowed to state the facts he knew and the state of his feelings: *Held*, no error in the ruling.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Massac county; the Hon. DAVID J. BAKER, Judge, presiding.

Messrs. LINEGAR & LANSDEN, for the appellant:

If the cruelty is not extreme, or of such a character as to subject the wife to the danger of great bodily harm, no difference how often repeated, it constitutes no ground for divorce. *Henderson* v. *Henderson*, 88 Ill. 250; *Turbitt* v. *Turbitt*, 21 id. 438.

The acts of the defendant in this case, if sufficiently proven, are too far apart, and not of such a character as to show that the complainant was or is in danger of bodily harm. The marriage contract will not be dissolved for light and trivial causes. *King et al.* v. *King*, 15 Ill. 187.

There must be acts or threats which may raise a reasonable apprehension of bodily hurt; the cause must be grave and weighty, and show a state of personal danger incompatible with the duties of married life. *Harmon* v. *Harmon*, 16 Ill. 90. See, also, *Vignos* v. *Vignos*, 15 Ill. 186; *De La Hay* v. *De La Hay*, 21 id. 252; *Burkby* v. *Burkby*, 25 id. 120; *Von Glahn* v. *Von Glahn*, 46 id. 145.

Mr. J. F. McCARTNEY, for the appellee:

Two acts of physical violence, coupled with abusive language and false charges of unchastity, amount to extreme

and repeated cruelty. *Farnham* v. *Farnham,* 73 Ill. 499; 1 Bishop on Marriage and Divorce, secs. 762, 724, 729.

While it is true that in a bill for divorce on the ground of cruelty, the specific acts on which the charge rests must be set out in the bill, yet the evidence is not limited to the particular acts charged. Evidence of other acts, which serve to give character to the specific facts proved, is admissible. *Briggs* v. *Briggs,* 20 Mich. 34.

The finding of the jury is *prima facie* proof that it is sustained by the evidence. *Thacher* v. *Thacher,* 17 Ill. 66; *Becker* v. *Becker,* 79 id. 532.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was a bill for divorce, by appellee against appellant. Several grounds are charged in the bill, but since the verdict of the jury and decree of the circuit court are in favor of appellee upon that of extreme and repeated cruelty only, it is unnecessary to notice the others.

We deem it important to say in regard to the preliminary objection urged, of a variance between the allegations and the proofs, only that, in our opinion, it is without merit. Literal proof of every allegation is not required. Substantial proof of the material allegations is sufficient, and, in our opinion, this record shows such proof was here made.

The principal objection taken to the decree below is, the evidence fails to show that appellant treated appellee with extreme and repeated cruelty. Appellee testified that about the last of February, 1874, on a Sunday, in consequence of her having left word with her hired woman for her oldest son to follow her to church, appellant said to her: "Madam, I'll learn you not to interfere with my children. You are the d———dest b———h in town!" and that he then struck her as hard as he could. Then, a short time after this, a controversy arose between them in regard to a power of attorney to appellant to control property which she had inherited from

a deceased uncle, when, as she testified, appellant struck her again. Sometime after this, as she also testified, appellant said to her: "Madam, you have been countermanding my orders about the children again." She replied: "I have done nothing more than is necessary." He then came up and again struck her. She says he struck her on the side of the face violently,—that the pain it made caused her to cry. At another time, she says, he threw the silverware in the fire, saying at the same time, "D——n these things of your mother's, I will make an end of them!" On a subsequent occasion, she says, while she was sick with the chills, appellant was "calling her names." Her brother, who was present, remarked to him that "nobody but a brute could talk to his wife that way when she was sick," and her husband thereupon ordered him to leave the house. The next difficulty between them she thus describes: "One evening I came back from Rev. J. H. Scott's, the Presbyterian preacher. At supper time he (appellant) said: 'Madam, this is a pretty way for a woman running after other men—neglecting their family. You're one of the d——dest b——s in town.' * * * The next day he kept up the insulting language, calling me an old b——h." She says that she then started to leave, but was induced not to do so by her children. Another difficulty, that occurred in the summer of 1875, she thus describes: "I was wiping the things to hurry up dinner. Mr. Ward came and said, 'I believe I'll go to the hotel and get my dinner.' I said, 'Mr. Ward, you've been away, and had better eat dinner at home.' He said, 'I can be waited on better there than at home; I have to wait a half an hour for sugar.' I told him I tried to do the best I could. I started in the room, and he struck me and knocked me against the door." She says they had trouble again in June or July, 1876, and for three weeks he allowed her no rest, by night or by day. After this, upon one occasion, after reproaching her, he seized her so violently by the wrist that

she was compelled to scream for help. Finally, after detail-
ing many instances of excessive drinking and annoying lan-
guage by appellant, she says: "Mr. Ward said, 'Madam, by
what authority do you forbid the colored man from cutting
rails?' I said I had not, but Cap Johnson had. He said,
'Madam, you're a liar! You had better go and stay with
Cap Johnson, for you love him better than you do me.' I
said I would not stand this. He said, 'Go and live with
Cap Johnson.' I went out of the door, and he gave me a
push as I went. I was afraid to live in the house with him."
She then went and stayed for a time at a Mr. Brewer's, and
she says she did so because he accused her of being too inti-
mate with other men, and because she was afraid to live
alone with him. Since then they seem never to have lived
together as husband and wife.

Appellant, in his testimony, it is true, contradicts most, if
not all, of these charges, but in several of the most material
appellee is fully corroborated. William McBane, a brother
of appellee, testified that, for a considerable time, he boarded
with appellant and appellee; that on one occasion, when
appellee returned from church, appellant said she only went
to church to show herself; that she was too intimate with
preacher Scott, anyway,—that she was no better than any
other woman in Metropolis. On one occasion he heard
appellant call appellee "a d——d b——h." In February
or March, 1874, witness came home about dinner time, found
appellee sitting on the piano stool crying, and her face very
red. This witness, his brother Angus McBane, and the wife
of the latter, and a girl named Belle Everett, also corrobo-
rate appellee as to what occurred at the time appellant pro-
posed to go to the hotel for his dinner, as testified to by
appellee. They show conclusively that he then inflicted a
blow upon her. Caroline Knapp, who had been a servant
girl in the family, also corroborates appellee as to the occur-
rence when appellant commenced upbraiding appellee for

having directed that her son follow her to the church. She says he then struck her, and caught her by the cloak and tore it off her, the buttons flying about the room. Appellee's son, Angus Ward, testified substantially to the same thing.

It is, therefore, evident the jury had reason to believe the story of appellee rather than that of appellant. The circuit court felt authorized, by the evidence, to render a decree upon the verdict, and the Appellate Court, with the entire record before them, saw no reason to disturb that decree. No new light has been shed upon the case since it was brought to this court. We can not say we are clearly satisfied the lower courts took a partial and incorrect view of this evidence, and not being so satisfied, it only remains to inquire, did the law, upon such evidence, authorize the decree of divorce?

In *Harmon* v. *Harmon*, 16 Ill. 90, this court, in discussing what is meant by cruelty, said: "There must be acts or threats which raise a reasonable apprehension of bodily hurt, the causes must be grave and weighty, and show a state of personal danger incompatible with the duties of married life." And it was also said these must be extreme and repeated.

In *Farnham* v. *Farnham*, 73 Ill. 497, this court said, in reference to the facts of that case: "Two distinct acts of physical violence to the person of appellee are clearly proven. It is shown by testimony every way worthy of belief, outside that of appellee, that appellant, on two occasions, struck his wife in anger. This would constitute, under our statute, technical cause for divorce. No great physical injury was inflicted upon appellee on either occasion; but the jury could, very properly, consider the abusive language which the evidence shows he applied to her, not only in their private room, but in the presence of strangers, as characterizing these acts of physical cruelty, and as giving to them a poignancy they would not otherwise have. It was proven

he addressed to her, in the coarsest terms, language that implied a want of chastity. There is nothing that inflicts so deep and cruel a wound upon a pure wife as a false accusation of a want of chastity, beside which the physical injuries proven in this case are as nothing. The law has made the one a cause of divorce, but not the other. It would be a reproach to our laws if it were not permissible for a wife to abandon a husband who should continually, without just reason, reproach her with a want of virtue and fidelity to her marriage vows. Happily the law will not require her to submit to any such degradation. While such conduct will constitute no grounds for divorce, under our statute, it will justify her in living separate and apart from her husband."

Undoubtedly extreme and protracted suffering may be produced primarily by operating on the mind alone, and hence threats of physical violence and false charges of adultery, maliciously made, are competent evidence to prove cruelty, (*Kennedy* v. *Kennedy*, 73 N. Y. 369,) and when they are accompanied or followed by acts of actual malicious physical violence, they serve to magnify the atrocity of the acts.

It is difficult to define with precision what is and what is not extreme and repeated cruelty. The same act is not the same thing under all circumstances, and to all persons. Necessarily each case must, to a large degree, be judged by itself. It is said, with perhaps sufficient accuracy, in *Poor* v. *Poor*, 8 N. H. 307: "In the judgment of law, any willful misconduct of the husband which endangers the life or health of the wife, which exposes her to bodily hazard and intolerable hardship, and renders cohabitation unsafe, is extreme cruelty, and in order to amount to such cruelty it is not necessary that there should be many acts. Whenever force and violence, preceded by deliberate insult and abuse, have been once wantonly and without provocation used, the wife can hardly be considered safe."

As has been seen, the proof here shows some four or five distinct assaults and batteries committed by appellant upon appellee, and apparently without provocation, and, in addition to these, almost constant insult and abuse within a period of three years, terminating with their separation. It is but just to appellee to say that even appellant admits there was not the slightest foundation for the charge of adultery. It can admit of no doubt that in his references to the Rev. Mr. Scott and Capt. Johnson he wished her to believe that he supposed her unchaste, for the sole purpose of adding mental pain and suffering to that suffered by her person from the violence of his hands. We think the law authorized the decree as rendered.

An objection is alluded to, but not discussed, in regard to the conduct of a juryman, but since the evidence on this question is not abstracted or fully presented in the briefs, we conclude it is abandoned.

The objection on account of the refusal of the court to allow the witness William McBane to give the contents of a letter written by himself to appellant, is untenable. He was not a party to the suit, and what he wrote was of no consequence. What his feelings were, and what the facts were, he was allowed to show, but what he wrote in regard to appellee's conduct would have presented an immaterial issue.

The court, in giving and refusing instructions, ruled substantially in accordance with the views we have here expressed, and it will subserve no useful purpose to discuss the rulings in these respects *seriatim*.

We see no cause to disturb the decree below, and it will be affirmed.

*Decree affirmed.*

Mr. JUSTICE MULKEY took no part in the decision of this case.