(No. 16163.—Reversed and remanded.)
THE CITY OF CHICAGO, Appellant, *vs.* THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY *et al.* Appellees.

*Opinion filed December 16, 1925—Rehearing denied Feb. 3, 1926.*

1. APPEALS AND ERRORS—*when freehold is involved in suit to enforce penalty of ordinance.* If a title is directly put in issue by the pleadings, even though it is not the subject to be recovered, a freehold is involved, and in a suit by a city to recover a penalty for failure of an abutting owner to keep a wharf or dock in repair, as required by an ordinance, an appeal may be taken directly to the Supreme Court where the right to recover the penalty is based upon proof that the public owns the freehold of the land underlying the water where the wharf or dock is located.

2. PLATS—*court will take judicial notice of permanent monuments at section corners shown on plat.* In determining the sufficiency of a plat to meet the requirements of a statutory dedication

the court will take judicial notice of the fact that at each section corner a permanent monument exists, and where the property is located on the plat by distances from the intersections of section lines, it is not necessary that the plat show the placing of a stone or other permanent monument by the surveyor at the section corners.

3. SAME—*when numbers on plat need not be designated as feet.* A plat is not defective because the figures upon it are not designated as feet where the plat shows on its face that it was drawn to a certain scale, that the surveyor certified that it was correct, and that the lines and spaces correspond to the numbers as indicating feet according to the scale.

4. SAME—*plat may establish private ways.* No rule of law forbids the subdivision of land by the owner in such a way as to establish over it only private ways for the sole benefit of those who may become owners of lots in the subdivision.

5. SAME—*what sufficient to effect dedication to public.* To effect a public dedication the intention of the owner to give the land to the public and the particular use for which the land is given must be made to appear, but no particular manner or method is necessary to manifest such intention, and the dedication may be made by a survey and plat, alone, without any declaration, either oral or on the plat, where it is evident from the face of the plat that it was the intention of the proprietor to set apart certain land for the use of the public.

6. SAME—*use of roadway or waterway may be considered in determining dedication to public.* The actual use to which a roadway or waterway is put may be of assistance in determining whether it is public or private.

7. SAME—*when slip for docking of vessels is dedicated to public use.* A slip extending into land from a navigable river has a well known use in commerce and navigation for the docking of vessels, and when designated on a plat as a slip it will be presumed to be intended for its ordinary use although the word "slip" is not preceded by the word "public," where the proprietor in making the dedication does not impose any limitation upon the use of the slip.

8. SAME—*designation on plat may be overcome by evidence of intention to dedicate to public.* A public dedication will not be presumed in the absence of all evidence that such was the proprietor's intention; but the use of the word "private" is not necessarily controlling, and such a designation on a plat may be overcome by evidence that the space so marked was intended for public use.

9. SAME—*doubts as to dedication are resolved against owner.* In the interpretation of maps and plats all doubts as to the intention of the owner should be resolved most strongly against him.

10. MUNICIPAL CORPORATIONS—*the city of Chicago may enforce provision of municipal code for repair of wharves and docks.* By sub-section 33 of section 1 of article 5 of the Cities and Villages act, giving cities power "to regulate and control the use of public and private landing places, wharves, docks and levees," the city of Chicago was authorized to enact section 1727 of the municipal code of 1922, charging abutting owners with the duty of keeping wharves and docks in repair, and for failure to perform that duty the city may recover the penalty provided in the ordinance.

APPEAL from the Municipal Court of Chicago; the Hon. PHILIP J. FINNEGAN, Judge, presiding.

FRANCIS X. BUSCH, Corporation Counsel, and SAMUEL E. PINCUS, (ALBERT H. VEEDER, of counsel,) for appellant.

JOSEPH A. CONNELL, and SIDNEY F. BLANC, (BRUCE SCOTT, of counsel,) for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The city of Chicago instituted suit in the municipal court of that city to recover from the Chicago, Burlington and Quincy Railroad Company, the Lake Sand Corporation and the Burlington South Chicago Terminal Railroad, a penalty for their failure to re-build about 1700 feet of dock on the south side of slip No. 1, adjoining the Calumet river on the west at 101st street, in the city of Chicago. Judgment was rendered for the defendants, and the city prosecutes this appeal on the ground that a freehold is involved.

The basis of appellant's suit is the alleged violation of section 1727 of the Chicago municipal code of 1922, which provides: "Every owner, lessee or person in possession of premises abutting on the harbor shall at all times keep the wharves and docks on such premises in good repair and safe condition. Every person violating or failing to comply with any provision of this section shall be fined not less than $20 nor more than $50 for every day such violation

319—23

or failure to comply shall continue." * * * The code contains provisions and makes regulations concerning the harbors within the city limits. Harbor districts are created, of which No. 4, by section 1703, comprises "all of the Calumet river lying within the city of Chicago, all of Lake Calumet, including all the waters, submerged lands and artificially made or reclaimed lands within or bordering upon said lake and river, the channel or connection between said Calumet river and Calumet lake, and all public turning basins, canals and slips connected with, or forming a part of, said Calumet river and Calumet lake." * * *

The slip in question is included within the South Chicago Dock Company's addition to South Chicago. The subdivision was made by the South Chicago Dock Company, the owner of the land, and the plat was filed for record in the recorder's office of Cook county on March 19, 1883. The plat was drawn to a scale of 200 feet to the inch. Blocks, slips, private railroad streets, the Calumet river, the Chicago and Western Indiana railroad, the north half of 106th street, the east half of Muskegon avenue, and the east and south lines of the section in which the subdivision is situated, are shown upon it. The certificate of the officers of the dock company to the plat states: "We further certify that as such officers of the said company and for its uses and purposes we have caused the land herein above described to be subdivided and platted into blocks, slips and private railroad streets, and that we have caused dock lines to be fixed on the west side of the Calumet river, all of which is shown upon the plat hereon drawn."

The evidence offered on behalf of the city to show that the slip is a public one, consisted of the plat of the subdivision with the several certificates endorsed thereon; the public user, it appearing that vessels other than those owned by the parties occupying the property abutting on the slip occasionally used it for the purpose of turning around; the making of repairs to the dock by parties occupying abutting

property after obtaining the consent of the city to do the work; and the ordinances of the city relating to harbors, slips and docks and their control and regulation. No evidence was offered on behalf of appellees, but they contended that the plat was insufficient to meet the requirements of a statutory dedication; that nothing on the plat indicated an intention to dedicate the slip to the public; that the officers of the dock company, the owner which made the subdivision, by using in their certificate to the plat the words, "for its uses and purposes [meaning the uses and purposes of the company] * * * have caused the land * * * to be subdivided," clearly indicated that the slip was intended to be a private one; that there was nothing to show that the city ever exercised dominion over the slip, and that the occasional use of the slip by vessels for turning purposes has no weight in determining whether the slip was dedicated to and accepted by the public.

No freehold is sought to be recovered in this case. The judgment necessarily must be either for the recovery of a penalty or the discharge of appellees. One of the contentions of the city, however, is, that the right to recover a penalty is based upon proof that the public owns the freehold of the land underlying the water in the slip; while another is, that the city, under its police power, is authorized to regulate the slip for the safety of the public and to impose a penalty for the violation of its applicable ordinances, irrespective of the ownership of the freehold. If a title is directly put in issue by the pleadings, even though it is not the subject sought to be recovered, a freehold is involved. (*Sanford* v. *Kane,* 127 Ill. 591; *Waggeman* v. *Village of North Peoria,* 160 id. 277; *Stevenson* v. *Lewis,* 244 id. 147.) The appeal was properly taken to this court.

To support the contention that the plat is insufficient to meet the requirements of a statutory dedication, appellees argue that the plat fails to refer to some known existing monument, and that it does not appear that the figures in-

dicating the lengths and widths of the blocks, slips and private railroad streets denote feet, chains or some other unit of measurement. The plat shows the east and south lines of section 7, township 37 north, range 15 east of the third principal meridian, south of the Indian boundary line, and their intersection. It also shows the north line of the south three-fourths of section 7 and the intersection of that line with the east line of the section. The exact location of every block, slip and private railroad street in the subdivision with reference to, and their respective distances from, these intersections are shown. One of these intersections is the southeast corner of the section in which the subdivision in question is situated. We may take judicial notice of the fact that at each section corner a permanent monument exists. Under these circumstances there was no necessity for the surveyor to plant and fix a stone for reference and to designate upon the plat the point where it might be found. *Corbin* v. *Baltimore and Ohio Chicago Terminal Railway Co.* 285 Ill. 439.

Certain lines upon the plat run parallel to the east line of the section, and their respective distances in feet from the section line are shown. These distances, as well as all other numerals upon the plat indicating the lengths of lines and the widths of spaces, accord with the scale upon which the plat was drawn. The surveyor certifies that the plat is correct. It is impossible, therefore, that the numerals indicate anything other than distances in feet. A plat is not defective although the figures upon it are not designated as feet where the plat shows on its face that it was made to a certain scale, that the surveyor certified that it was correct, and that the lines and spaces correspond to the numbers as indicating feet according to the scale. (*People* v. *Massieon,* 279 Ill. 312.) The plat was a sufficient compliance with the statute.

No rule of law forbids the subdivision of land by the owner in such a way as to establish over it only private

ways for the sole benefit of those who may become owners of lots in the subdivision. (*City of Chicago* v. *Drexel,* 141 Ill. 89.) To effect a public dedication the intention of the owner to give the land to the public and the particular use for which the land is given must be made to appear. (*Gentleman* v. *Soule,* 32 Ill. 271; *City of Chicago* v. *Wright,* 69 id. 318; *Maywood Co.* v. *Village of Maywood,* 118 id. 61; *Birge* v. *City of Centralia,* 218 id. 503; *Poole* v. *City of Lake Forest,* 238 id. 305.) No particular way or manner is, however, necessary to manifest such an intention. (*Ingraham* v. *Brown,* 231 Ill. 256; *People* v. *Chicago and Northwestern Railway Co.* 239 id. 42; *Thompson* v. *Maloney,* 199 id. 276.) A dedication may be made by a survey and plat alone, without any declaration, either oral or on the plat, where it is evident from the face of the plat that it was the intention of the proprietor to set apart certain grounds for the use of the public. (*Maywood Co.* v. *Village of Maywood, supra; DuPont* v. *Miller,* 310 id. 140.) The actual use to which a roadway or waterway is put may be of assistance in determining whether it is public or private. *Ligare* v. *Chicago, Madison and Northern Railroad Co.* 166 Ill. 249; *DuPont* v. *Miller, supra.*

A slip extending into land from a navigable river has a well known use in commerce and navigation and for the docking of vessels, and when designated on a plat will be presumed to be intended for its ordinary use. (*DuPont* v. *Miller, supra; McAlpine* v. *Chicago Great Western Railroad Co.* 68 Kan. 207.) Neither the word "public" nor "private" precedes the designation of any of the slips shown by the plat. All the streets which appear upon it are designated "private railroad streets." The dock company was careful to avoid a dedication of the streets to the public by expressly limiting their use to private purposes. It could easily, by the use of the word "public" or "private" with reference to the slips, have made its intention in respect to them equally clear. It is true that a public dedication will

not be presumed in the absence of all evidence that such was the proprietor's intention. (*Poole* v. *City of Lake Forest, supra.*) Yet the use of the word "private" is not necessarily controlling, for if that word is marked upon a plat and the evidence shows the space so marked was intended for public use, the evidence is sufficient to overcome the designation on the plat. (*Smith* v. *Heath,* 102 Ill. 130.) The word "slip," without being preceded by the word "public," is often used when a public slip is intended. (*Thompson* v. *Mayor of New York,* 11 N. Y. 115; *DuPont* v. *Miller, supra;* 7 Words and Phrases, p. 6532; 1 Farnham on Waters, p. 521.) In the interpretation of maps and plats all doubts as to the intention of the owner should be resolved most strongly against him. (*Thompson* v. *Maloney, supra; People* v. *Chicago and Northwestern Railway Co. supra.*) The slip in question opens into a navigable water, the proprietor did not impose any limitation upon its use, and from a consideration of the whole plat we are convinced that the slip was dedicated to the public use.

By sub-section 33 of section 1 of article 5 of the Cities and Villages act the city council of the city of Chicago was vested with power "to regulate and control the use of public and private landing places, wharves, docks and levees." The power so conferred was exercised by the passage of section 1727 of the Chicago municipal code of 1922. If the parties charged with the duty of keeping the dock in question in good repair and safe condition fail to perform that duty, they are amenable to the provisions of that section of the code.

The judgment of the municipal court of Chicago will be reversed and the cause remanded to that court for further proceedings in accordance with this opinion.

*Reversed and remanded.*