(No. 16610.—Decree affirmed.)
LINA WALZ, Appellee, vs. JACOB WALZ, Appellant.

*Opinion filed April 20, 1927—Rehearing denied June 8, 1927.*

1. DIVORCE—*when the court may order conveyance as alimony.*
Where no contribution has been made from the wife's means to
the acquisition of the husband's property, the court will not be
justified, upon granting a divorce to the wife, in decreeing the title
to the husband's land to her for alimony except in case of some
special equity arising out of the particular facts in the case, but
where the wife has contributed $1000 and the husband $3000 and
title has been taken in them jointly, the court may order a convey-
ance of the entire property to the wife upon her paying to the hus-
band substantially the value of his interest therein.

2. HUSBAND AND WIFE—*gift is presumed where title is taken in
wife's name—joint tenancy.* Where the husband pays the purchase
price of real estate from his own funds but takes the title in his
wife's name the law presumes that he intends to make her a gift,
and where the husband contributes $3000 and the wife $1000 and
the title is taken in them jointly, giving each an equal legal inter-
est, the result is a gift to the wife of one-third of the husband's
interest.

APPEAL from the Circuit Court of Cook county; the
Hon. HUGO M. FRIEND, Judge, presiding.

LANDON & HOLT, (PERRY B. BRELIN, of counsel,) for
appellant.

ABRAM E. MABIE, and HENRY ROTH, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Lina Walz filed a bill against her husband, Jacob Walz,
in the circuit court of Cook county, for separate mainte-
nance, which was afterward amended so as to pray for a
divorce on the ground of habitual drunkenness and for ali-
mony. An answer was filed to the amended bill denying
most of its material allegations. The cause was heard by
the court, and on June 28, 1924, a decree was entered
granting a divorce on the ground of habitual drunkenness

and decreeing a conveyance of real estate, upon terms pre-
scribed, in lieu of alimony.  The defendant prayed an ap-
peal to the Appellate Court, and that court, on his motion,
ordered the cause transferred to this court on the ground
that a freehold was involved.

The parties were married on December 12, 1895, and
lived together for twenty-five years.  They had two chil-
dren, only one of whom was living, who was twenty years
old at the time of the hearing.  It is contended that there
is not sufficient evidence in the record to sustain the find-
ing of the decree that defendant was guilty of habitual
drunkenness.  The complainant testified that prior to the
filing of the bill her husband would become intoxicated
two or three times a week, or oftener.  That began immedi-
ately after their marriage and continued practically all the
time.  He was a bottle-beer driver for Seipp's for twenty-
three or twenty-four years.  He would go to his work at
five o'clock in the morning and sometimes come home at
midnight, sometimes at two or three o'clock in the after-
noon, sometimes not until the next morning and sometimes
not for a few days.  This was during the whole time of
the marriage.  There was no regularity about his getting
home.  When he was intoxicated he would curse and swear
and call her names and he used vile language.  He would
say he wanted to break up things around the house, but he
never did break anything up.  She could smell the liquor
so that she had to open windows and doors, and he called
her dirty names.  She was corroborated by their twenty-
year-old son, who was living with his mother, and testified
that he had seen his father drunk or under the influence
of liquor for weeks at a time,—pretty nearly every night,—
and then there would be weeks when he would not be.  He
would frequently come home drunk and was generally bel-
ligerent and quarrelsome.  His language was not decent and
was profane.  He called his wife vile names and treated
her with little respect, and these actions had been going on

as long as the boy could remember. The complainant's sister, Mrs. Emma Becker, who lived near her on the same street, visited her at her home very often during their married life,—two or three times a week,—and would stay an hour or an evening, or sometimes the whole afternoon. She saw the defendant intoxicated quite often. When under the influence of liquor he was quarrelsome. He used profane language. She could not recall exactly what he said, but knew he was always quarreling with his wife about one thing or another.

The defendant denied that he ever drank to excess or ever got drunk, did not get drunk two or three or four times a week, and did not remember that he ever got drunk during his married life. His wife accused him of being out with other women, which angered him, but he always tried to treat her with respect. He never used exactly vile language, but would call her a louse or tell her she was beyond redemption. He never used anything worse· than that and did not think he ever swore at or cursed her.

Joseph Kugel, an artist, who was a near neighbor, testified that he had known the defendant about eight years and had seen him quite frequently during the last five or six years; that he had never seen him drunk; that he would see him in the early part of the evening, particularly in the summer months when he would be out of doors, and Kugel would go in and talk with him.

Oswald Meggison, who was business agent and secretary of the Bottle Drivers' Union, testified that he had known the defendant since 1893 and had seen him two or three times a week for the last five or six years during the day and during the evening and never saw him drunk or under the influence of liquor. He testified: "I never smelled liquor on his breath; I never noticed that far because I might have had some myself." On cross-examination he was asked whether there were any rules prevailing in the union as to the hours of employment of beer drivers

by breweries, and he answered, "No, sir." To the question, "They could go to work when they wanted to and remain as long as they wanted to?" he answered, "Work until you were drunk; we had no hours at all."

From this evidence the court, which heard the witnesses, found that the charge of habitual drunkenness was proved, and we cannot say that the finding was not sustained by the evidence.

On June 20, 1921, the complainant and the defendant purchased a lot on Lawrence avenue, in the city of Chicago, improved with a two-flat frame building and a two-car frame garage, for $4000, subject to a mortgage for $2000, the complainant paying $1000 of her own money and the defendant $3000 of his money on the purchase price. This property, and a Ford truck worth about $140 owned by the defendant, is all the property which the parties own. The family had been occupying one of the flats, the defendant using a bed-room off the kitchen as a sleeping room and getting his meals elsewhere, and the complainant, with their son, using the rest of the house, the other flat and garage being rented for $52 a month. The court decreed that the defendant convey all his right, title and interest in this lot to the complainant in lieu of alimony, upon the payment by the complainant to the defendant of $1000 as soon after the entry of the decree as convenient, and $800 to be paid in monthly installments of $40, beginning July 15, 1924. It was also ordered that the defendant pay within ...... days the sum of $200 for her solicitor's fees, and vacate the part of the premises now used and occupied by him within ten days from the entry of the decree. It is contended by the appellant that this part of the decree is unreasonable and unjust; that he should not be decreed to convey to the complainant, in lieu of alimony, the premises in which he has invested $3000 and she only $1000, but that alimony should have been decreed in a certain sum, payable at stated periods, and should

remain within the power of the court to increase or diminish, as may be just, and that the interests of the parties in the real estate should be decreed to be one-fourth in the complainant and three-fourths in the defendant.

It is the ordinary rule that a decree for alimony should not vest the fee of the husband's real estate in the wife except where special circumstances exist justifying such a decree. (*Ross* v. *Ross,* 78 Ill. 402; *Robbins* v. *Robbins,* 101 id. 416; *Shaw* v. *Shaw,* 114 id. 586.) Where no contribution has been made from the wife's means to the acquisition of the property, the court will not be justified, upon granting a divorce to the wife, in decreeing the title of the husband's lands to her except in case of some special equity arising out of the particular facts in the case. (*Wilson* v. *Wilson,* 102 Ill. 297; *Champion* v. *Myers,* 207 id. 308.) Where such special equity does exist the power of the court to render such a decree is well established. (*Bergen* v. *Bergen,* 22 Ill. 187; *Armstrong* v. *Armstrong,* 35 id. 109; *Meighen* v. *Meighen,* 307 id. 306.) In this case the wife did contribute $1000 toward the purchase of the real estate, and she testified that during the greater part of their married life she had worked at dressmaking and had earned on an average $15 a week at that occupation and that all her earnings were devoted to the household expenses. This fact was proper to be considered by the chancellor in determining the existence of special equities in her favor and justifying a departure from the general rule in regard to the allowance of alimony.

The purchase price of the property was $6000. It was subject to a mortgage for $2000. The decree found the defendant capable of earning from $40 to $45 a week and that he had been doing so since 1918. The complainant's contribution to the purchase of the property was $1000; his, $3000. The conveyance was made to them jointly, and they were therefore legally equally interested in the property. The law presumes when the husband pays the

purchase price of real estate from his own funds but takes the title in his wife's name that he intends to make her a gift. (*Schultz* v. *Schultz,* 274 Ill. 341; *Hartley* v. *Hartley,* 279 id. 593.) The conveyance was made a few months before the suit for divorce was begun but after the estrangement between the husband and wife had existed a long time. By this gift the husband gave to his wife a third of his real estate. The evidence discloses that the mortgage, drawing six per cent interest, was due July 1, 1924, three days after the decree was entered, and that the parties had no money to pay it. The court might have decreed weekly or monthly payments of alimony and made them a lien on the appellant's interest in the property, but this would have made it difficult to obtain any release of the mortgage and would increase the danger of losing the property by foreclosure. Under the special circumstances the court was justified in vesting the fee in the appellee, subject to the mortgage, upon payment to the appellant of $1800, which was substantially the value of his interest in the equity of redemption.

The appellant was properly required to pay the $150 which he had been directed to pay during the pendency of the cause and the appellee's solicitor's fee of $200.

The decree required payment of $1000 by the appellee as soon as convenient and of $800 in monthly installments of $40, beginning July 15, 1924. The time for making these payments having elapsed, the decree will be modified so as to require the payment of $1000 within thirty days from June 8, 1927, and the payment of the $40 monthly installments beginning fifteen days thereafter. With this modification the decree is affirmed. The death of Lina Walz, the appellee, on December 7, 1925, having been suggested since this cause was submitted for decision, it is ordered that the judgment of affirmance be entered as of the date of the submission of the cause.

*Decree affirmed.*