(No. 27051.—Reversed and remanded.)
OLGA HOLMSTEDT, Appellant, *vs.* HJALMAR HOLMSTEDT,
Appellee.

*Opinion filed May 20, 1943.*

HARRY Z. and BERNARD PEREL, (ABRAHAM H. MAL-LER, of counsel,) for appellant.

BUTLER & GILMORE, (WILLIAM B. GILMORE, of counsel,) for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Appellant, Olga Holmstedt, filed on December 10, 1940, in the superior court of Cook county, her complaint against her husband, Hjalmar Holmstedt, for divorce, charging him with extreme and repeated cruelty and habitual drunkenness. Defendant filed an answer denying the charges and a counterclaim in which he alleged that the property in which plaintiff resided was purchased and paid for by him, although the title was still in her name. He prayed that plaintiff be restrained from encumbering or selling the real estate described in the counterclaim and for an order to convey the premises to him subject to his wife's dower rights. In her answer to the counterclaim, appellant averred that the real estate involved was purchased both by her and appellee and that title was taken in appellant's name in order to preserve the property. On December 5, 1941, appellant filed her amended complaint in which she alleged the same acts of cruelty and drunkenness as appeared in her complaint for divorce, averred that the real estate described was purchased by both, with the money of both, and that title was taken in her name because of the habits of her husband. In her amended complaint she abandoned her complaint for divorce and changed the relief sought to separate maintenance, and prayed that the real estate be decreed to her as her sole and separate property. Appellee then amended his counterclaim praying for a

divorce on the ground of desertion. Appellant filed answer to the counterclaim as amended and appellee's answer to the original complaint was ordered to stand as an answer to the amended complaint.

The court heard evidence and entered a decree dismissing appellant's complaint as amended, granting appellee a divorce on his counterclaim and decreeing that the real estate is the property of both parties jointly, that for her separate support and maintenance it is necessary that she continue in possession of the real estate with the right to retain the rents collected and that she be restrained from encumbering or selling the property. It was further decreed that appellee pay appellant $5 a week for permanent alimony.

Appellant objects to the decree of the circuit court, contending (1) that the court erred in dismissing the amended complaint; (2) that the court erred in failing to enter a decree for separate maintenance; (3) that a decree for divorce should not have been granted on the cross complaint; (4) that there was error in dismissing appellant's amended complaint for want of equity; (5) that a reasonable and adequate sum for appellant's support was not allowed by the decree; and (6) that the court was prejudiced against appellant.

Where a title is directly put in issue by the pleadings a freehold is involved. (*City of Chicago* v. *Chicago, Burlington and Quincy Railroad Co.* 319 Ill. 351; *Sanford* v. *Kane,* 127 Ill. 591.) A freehold is involved in a divorce or separate maintenance proceeding where, in settling property rights, the decree takes the title to real estate from one and places it in the other party to the suit. *Lewis* v. *Lewis,* 316 Ill. 447; *Young* v. *Young,* 323 Ill. 608.

Before any evidence was heard the court inquired as to whether or not the cause was a suit for separate maintenance. On being informed that such was the case he asked how long the parties had been separated and when

told they had lived apart since December 10, 1940, more than a year, he inquired and was informed that the parties had been married since 1914. He then asked the following questions: "Why is she asking for separate maintenance? If she doesn't want to live with him, why not divorce him?" Counsel for appellant suggested to the court that possibly he might rather not hear the matter. To this suggestion the court replied, "I am going to hear it. I have no more prejudice against her than anyone else. The court does not believe it is wise for people living apart to be still married to each other. It does not make for good morality. She does not want him and still does not want to give him his freedom. Go ahead with the case."

Counsel for appellant argues that the court's apparent bias affected unfavorably his consideration of the evidence offered in support of appellant's claim for separate maintenance. By the enactment of the Married Women's Act of 1867, the legislature conferred upon courts of equity jurisdiction to enforce the common-law duty of the husband to furnish support and maintenance for his wife, upon her application, where she is living separate and apart from him without her fault. (*Ross* v. *Ross,* 69 Ill. 569.) The act creating this equitable remedy has been held valid by this court. (*Amberson* v. *Amberson,* 349 Ill. 249.) By the present statute, (Ill. Rev. Stat. 1941, chap. 68, par. 22, p. 1796,) the remedy exists in favor of either the wife or husband. The public policy as expressed by legislative acts is not a matter for the courts. Their duty is to apply the law as they find it. Appellant had the right to select her remedy and to have her case heard by an impartial judge. It was the duty of the court as soon as he discerned within his own mind any feeling of opposition to a pronounced public policy of the State such as might prejudice him for or against either party to the litigation, promptly and of his own motion, to disqualify himself and have the case reassigned.

This court has said that the spirit of our laws demands that every case shall be fairly and impartially tried, and no judge should think of presiding in a case in which his good faith in so doing is open to such serious question as that presented by this record. (*People* v. *Scott,* 326 Ill. 327.) No petition for a change of venue was filed and this error of the court in proceeding with the hearing, after expressing his bias against an existing law, did not afford an absolute right in appellant to have a change of venue; nevertheless, this must be considered in connection with a review of the entire record.

In support of her amended complaint for separate maintenance, appellant testified that appellee had been mean to her during the time they had lived together; that he struck her so many times she could not remember them all. On November 28, 1940, and on December 4, 1940, he came home drunk and pinched her arm so that it was black and blue. On the latter occasion he chased her and struck at her and around December 11, 1940, he struck her on the head with his fist. On December 7, of the same year, by reason of his violent conduct, she ran from the house and called the police. She testified there was no provocation on her part for such ill-treatment and that during the time they lived together she treated him the best she could.

As to his habitual drunkenness she testified he would go on long sprees, then would stop and start again; that his sprees would last from six to eight weeks at a time and he would be drunk three or four times a year; that the last time he was drunk before he left her, he was drunk every night for eight weeks; that when in this condition he would use profane language toward her in the presence of their son and that he threatened her life while in such condition; that he always left the house on Saturday nights, not returning until Monday morning. Appellant was corroborated in all her testimony by her twenty-six-

year-old son, who testified that his mother treated his father as a good wife should and gave him no reason to molest her or pinch her; that on December 4, 1940, he saw his father come home drunk and that he started fighting with his mother and that he and his mother ran down stairs when appellee picked up a dining-room chair; that he saw appellee strike his mother with his fist and had seen him strike her on many other occasions. The son's testimony was that appellee went on the average of five sprees a year and on at least three occasions he had left appellant of his own accord; that on one occasion he remained away for three or four months. He further testified that he saw appellee strike appellant on November 28, 1940, and that appellant never did strike or attempt to strike appellee; that when appellee went on a spree he did not bring his pay check home and that appellent received the pay check only about half of the time.

Another witness, Mrs. Hildegard Oak, also corroborated appellant and the son. She saw appellee drunk several times and saw him strike appellant with a mop which he took from the witness.

Appellee testified that he was not drunk on November 28, 1940; that he did not pinch appellant nor chase her around the house; that he treated his wife as a good husband should; that he never stayed out all night although he admitted he was out until three o'clock in the morning; that on December 7, 1940, being the date above testified to by his wife, he got hold of her arm to prevent her from striking him; that when he came home appellant was standing in the door and knocked his glasses off; that he was not drunk on November 28, but might have had a couple of drinks and that he did not go out on sprees as testified by appellant and their son.

Only one witness was called to corroborate appellee. He was a neighbor who lived three houses from appellee. He testified that he had seen appellee frequently for fifteen

to twenty years, sometimes every night and had never seen him drunk. Such evidence is negative, only, and does not disprove the affirmative evidence of those who testify to having seen him drunk. (*Murphy* v. *People,* 90 Ill. 59.) This witness, in testifying, also admitted taking drinks with the appellee.

The court's analysis of the evidence on the question of cruelty and habitual drunkenness demonstrates that his findings are clearly against the manifest weight of the evidence. He said: "The court is convinced that this complaint for separate maintenance was not filed in good faith." From a careful analysis of the evidence, no such conclusion can be justified, as the record fails to show supporting proof on that point. It clearly demonstrates the court's feelings against the law authorizing actions for separate maintenance. Evidence that a party had been drunk from three to five times in two years, has been held sufficient proof of habitual drunkenness. (*Murphy* v. *People,* 90 Ill. 59.) Evidence of intoxication without intermission is not necessary to prove habitual drunkenness, nor does the fact that appellee voluntarily abstained for short periods, indicate that he was not guilty of habitual drunkenness. (*Dorian* v. *Dorian,* 298 Ill. 24.) Habitual drunkenness may not, of itself, prevent one from going to his work in the morning, (*Walz* v. *Walz,* 325 Ill. 553,) where his intoxication occurs at night.

From a preponderance of the evidence in the instant case, it is clear that appellee suffered from an irresistible habit of getting drunk, bringing himself within the definition of "habitual drunkenness," outlined in *Garrett* v. *Garrett,* 252 Ill. 318, and also was guilty of extreme and repeated cruelty. While it is difficult to define what is and what is not extreme and repeated cruelty, (*Ward* v. *Ward,* 103 Ill. 477,) it has been often construed as meaning acts of physical violence producing bodily harm. *Teal* v. *Teal,* 324 Ill. 207.

Under the above circumstances, the appellant was not bound to live and cohabit with her husband, and while the living apart of husband and wife is not to be encouraged, still, where the wife is not, herself, at fault, she is not bound to live and cohabit with her husband if he pursues a persistent, unjustifiable and wrongful course of conduct toward her, which renders her life miserable and living with him as his wife unendurable. (*Johnson* v. *Johnson,* 125 Ill. 510.) The proof in this case preponderates in support of appellant's allegation and shows that his drunkenness rendered her association with him not only unpleasant but unendurable. The proof fails to show any conduct on her part justifying such treatment. The court should have granted her separate maintenance.

The court erred in granting a divorce to appellee on the ground of desertion. Desertion justifying a divorce must be wilful and without any reasonable cause. (*Floberg* v. *Floberg,* 358 Ill. 626.) It has been held that a reasonable cause which justifies a husband or wife to desert or abandon the other, must be such as would entitle the party guilty of abandoning the other, to a divorce. (*Fritz* v. *Fritz,* 138 Ill. 436.) Under that rule, even if appellant be considered as having deserted appellee, which we do not decide, she would have been justified in such desertion because the proof in this record absolutely shows that she was entitled to a divorce on the ground either of extreme and repeated cruelty or of habitual drunkenness. There is no evidence in the record of any wilful desertion on her part because his ill-treatment of her was the cause of their living separate and apart. (*Ross* v. *Ross,* 69 Ill. 569.) Furthermore, the proof shows that appellee left her and she remained in the family residence. There is no evidence that appellee ever offered to return to her nor is there any showing that she gave him cause to leave, except the contradicted testimony of appellee himself. Appellant having clearly made out a case on her amended complaint,

and appellee having failed to support his counterclaim for divorce with anything approaching a preponderance, we are compelled to hold that it was error to enter the decree from which this appeal was prosecuted.

Appellee failed to prove desertion for the statutory period. From the month he left his wife, she has had her suit pending against him for the dissolution or modification of the marriage contract. The time consumed in litigation for divorce or separate maintenance cannot be considered in calculating the statutory period of desertion. It is "time out." (*Floberg* v. *Floberg,* 358 Ill. 626.) Appellee not only failed to prove wilful desertion but also failed to show desertion for the period required by statute as forming a ground for divorce. There is no proof that appellant's complaint for separate maintenance was not filed in good faith.

On her prayer for relief appellant was entitled to have the title to the real estate declared to be solely in her. The property had been purchased twenty-two years prior to the hearing, it was paid for with their joint funds and title was taken in her name because of his habits. The presumption is that the title was placed in the wife's name as a gift or advancement. (*Kartun* v. *Kartun,* 347 Ill. 510; *Schultz* v. *Schultz,* 274 Ill. 341; *Hartley* v. *Hartley,* 279 Ill. 593; *Walz* v. *Walz,* 325 Ill. 553.) While such presumption is not conclusive, a party desiring to establish a resulting trust in real estate has the burden of establishing it by clear and convincing proof. No such proof was offered in this case. If such evidence had been presented, appellant could have defeated its effect by the application of the doctrine of *laches.* The long unexplained delay of appellee for twenty-two years in claiming any beneficial interest in the property bars his right, (*Simpson* v. *Manson,* 345 Ill. 543,) in the absence of any showing of a recognition of such interest by appellant.

The final point argued by counsel for appellant is that the decree fails to provide reasonable and adequate support for appellant. Since the title to the real estate enables appellant to have the exclusive occupancy and rents, both parties have an income and the rule for computing a proper allowance for the wife's support and maintenance is to add to the wife's annual income that of her husband, consider what, under all the circumstances, should be allowed her out of the aggregate, and then, from the sum so determined, deduct her separate income, and the remainder will be her proper annual allowance. (*Harding* v. *Harding,* 144 Ill. 588; *Decker* v. *Decker,* 279 Ill. 300.) The proof shows appellee's average weekly earnings as a machinist amount to $45, or $2340 per year. Appellant receives as a net income from the real estate and keeping of roomers the sum of approximately $800 per year, if the rooms are kept rented and there are no extraordinary maintenance and repair bills on the upkeep of the building.

The court fixed an allowance of $5 per week and while the amount of separate maintenance to be allowed is largely a matter of discretion with the trial court and while such discretion is subject to review, it will not lightly be disturbed on appeal. (*Reifschneider* v. *Reifschneider,* 241 Ill. 92.) However, the amount allowed by the court is insufficient. Since there is uncontroverted proof that she is in ill-health and under a doctor's care, she should be allowed her reasonable support and maintenance and reasonable counsel fees for the litigation in the trial court and for this appeal, to be fixed by the court.

For the foregoing reasons, the decree of the superior court is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*