(No. 11052.—Reversed in part and remanded.)

LIBBIE T. DECKER, Appellant, vs. JAMES H. DECKER, Appellee.

*Opinion filed June 21, 1917.*

1. SEPARATE MAINTENANCE—*to maintain bill for separate main-tenance wife must show that living apart is without her fault.* To maintain a bill for separate maintenance the wife must show not only that she has good cause for living separate and apart from her husband but also that such living apart is without fault on her part; and such fault, within the meaning of the statute, may be a voluntary consenting by her to a separation, or such failure of duty or misconduct on her part as materially contributes to a disruption of the marital relation.

2. SAME—*what questions are to be considered in determining amount to be allowed for separate maintenance.* Where a wife is entitled to separate maintenance the amount to be allowed depends not only upon the question of the misconduct of the husband but also upon the matter of their property and income, as well as their ages, health, past and present habits, social conditions and circumstances, and upon the further question whether or not there are children dependent upon one or both of them for support.

3. SAME—*when wife should be allowed alimony in a separate maintenance suit.* The amount of alimony to be allowed in a separate maintenance suit is to be determined as in a case for divorce, and if the wife's income be insufficient to maintain her and to carry on the litigation the husband's income should be required to contribute as alimony and to bear the expense of the suit, but if the income of the wife be sufficient to suitably support her there is ordinarily no reason for making such allowance.

4. SAME—*how to compute the amount for separate maintenance where both have an income.* Where both husband and wife have an income, a proper method of computing an allowance to the wife, if she is entitled to separate maintenance, is to add the wife's annual income to her husband's, consider what, under all the circumstances, should be allowed her out of the aggregate, then from the sum so determined deduct her separate income, and the remainder will be her proper annual allowance.

5. SAME—*wife should not be left in worse financial condition by reason of her marriage.* Where a wife is entitled to separate maintenance the settlement should not leave her in a worse financial condition by reason of her marriage, and she should have not merely what necessity demands but what complete justice requires,

but both parties should first have their equities settled in property held by both, jointly and separately.

6. SAME—*the court should settle rights in separate property.* If either or both of the parties to a separate maintenance suit have property other than that acquired through the marriage relation, by reason of having purchased or contributed to the purchase or accumulation thereof, the court may decree equities to both in such property or award it to the one who purchased it outright or award other property in lieu thereof, after which the husband may be required to pay a further sum at stated intervals, according to whether the wife is equitably entitled to further payments under the circumstances.

APPEAL from the Circuit Court of Wabash county; the Hon. J. C. EAGLETON, Judge, presiding.

P. J. KOLB, and M. J. WHITE, for appellant.

E. B. GREEN, and THEODORE G. RISLEY, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellant, Libbie T. Decker, filed her bill in the circuit court of Wabash county alleging that she is the only child and heir of George T. and Eunice Bedell, both of whom died intestate, and that appellee, James H. Decker, is her husband; that she inherited certain real estate from her parents described in her bill and situated in the city of Mt. Carmel, in the said county, including the Star Theater building; that no administration was had on the estates of her deceased parents, and that after their death she entrusted all of her business affairs to appellee, and that he had the sole and absolute control and management of her said property from 1902 until February, 1915; that on June 15, 1914, appellee, as her agent, sold to the United States for a post-office site in Mt. Carmel in-lot 481, one of her said pieces of property, for the sum of $20,000, which she entrusted to him to loan for her; that he appropriated large sums thereof to himself and invested other

large sums thereof in his own name, which investments are specifically described in the bill, and that he paid off a mortgage of $1000 on one of his own lots and paid other debts owed by himself; that he has converted all of said sum to his use except $4100 in bank stock invested in her name and about $2300 invested in automobiles, a diamond ring and some musical instruments, which are her property, and that he refused to transfer any of said investments in his name to her or to account to her for the remainder of the money. She further charged that about February, 1915, he began a course of oppressive and unbearable conduct toward her and demanded of her that she convey to him large portions of her property for the fraudulent purpose of possessing himself thereof; that on July 20, 1915, he falsely and fraudulently represented to her that if she would convey to him the portion of in-lots 479 and 219 known as the Star Theater building he would discontinue his ill-treatment of her and demean himself towards her as a kind husband, as he had done for many years before, and that if she refused so to do he would persist in his misconduct toward her; that she, relying on his promises and being induced by threats and duress, executed a deed to said property to him without consideration, and that on August 4, 1915, he caused the same to be recorded; that on October 17, 1915, he abandoned her without fault on her part and that she believes she has a just cause for divorce against him; that said deed is void and the record thereof should be expunged as a cloud on her title, and that the securities and stocks purchased with her money and taken in his name should be declared hers, and that she should be paid whatever sum may be found due her upon an accounting, for all of which she prayed in her bill. The bill was later amended by the further allegations that he has continued to absent himself from her and has wholly abandoned her without any reasonable cause; that he is the owner of certain property and is physically able to support himself and her, and is living

separate and apart from her without her fault and has failed to support her, and prays for separate maintenance.

Appellee by his answer admitted many of the allegations of the bill, including the receipt of the said sum of $20,000 of appellant's money for the post-office site, but denied that he converted any of it to his own use without her consent; admitted that he purchased seven shares of bank stock for $1400 with said funds, but averred that they were taken in his name by agreement of the parties; denied that he paid off a $1000 mortgage on his property out of said funds, that he was living separate and apart from her without her fault or that he fraudulently obtained said deed; charged that appellant drove him from their home by her unbecoming conduct, which he could no longer endure and which rendered him miserable; that he is sixty-two years of age and that she is fifty-nine; that he is not an able-bodied man and is unable to earn a support for himself and her and has no sufficient income to support himself comfortably; that appellant has received and is receiving an income from more than $50,000 worth of property paid for with money belonging to appellee and the accumulations during a long period of years; that he contributed money to the business of the Bedell estates for thirteen years for which he received no compensation, a reasonable compensation for which would be $15,000, and that the consideration of the deed to him by her to the Star Theater building was the money he had in the Bedell estates and the compensation due him for services. He then set out in his answer specific charges of misconduct on her part and a detailed account of what had been done by him with the $20,000 he received for the sale of the post-office site.

The court heard evidence on the issues thus formed, and by stipulation of the parties heard evidence as to the ownership of an amberola claimed by both parties and replevined by appellee from appellant in a separate suit. The decree held appellee to account for said $20,000, and he

received credits for the sum of $9850.88 for taxes, special assessments, attorney's fee, abstracter's fee, for surgical operations paid by him and for several investments made for her, and also including $1435 for seven shares of bank stock of the First National Bank of Mt. Carmel purchased in his name and for $4150 in bank stock taken in her name. By the decree he was charged and directed to pay her $5049.12 in money, and to transfer to her a $3600 note signed by P. J. Kolb, and three Lescher & Wilkins notes, amounting to $1500, and the $5049.12 was made a lien on the Star Theater building. The court also awarded to him the amberola, and found the deed to the Star Theater building to be a valid conveyance and refused to set aside the same, and denied the claim of appellant for specific alimony.

It is necessary to a proper decision of the issues on this appeal to first determine whether or not appellant has sustained her claim for separate maintenance. To maintain such a bill by a wife against her husband she must show not only that she had good cause for living separate and apart from her husband, but also that such living apart was without fault on her part. Such fault, within the meaning of the statute, is a voluntary consenting by her to a separation, or such failure of duty or misconduct on her part as materially contributed to a disruption of the marital relation. *Johnson* v. *Johnson,* 125 Ill. 510.

The record discloses that appellant and appellee had lived together for some thirty years as husband and wife and that they have no children. He was a model husband and she an exemplary and affectionate wife until their disagreement in June, 1914, over their property, and which was renewed in 1915 while a Mrs. Biddle was a guest in their home. One evening the three were sitting in a room in the Decker home and Mrs. Decker was playing a player piano. She saw reflected in the polished surface of the piano some gestures made by her husband towards Mrs. Biddle which she interpreted as intended long-distance em-

braces. Appellee was sitting in one corner of the room and Mrs. Biddle was in another corner. Shortly thereafter, in the presence of Mrs. Biddle, appellant related to appellee what she had seen by the reflections from the polished surface of the piano, and it appears from her testimony that he made no denial or explanation of the incident at that time or thereafter until the trial. At the trial both he and Mrs. Biddle testified that the gestures had reference to a walk the three were accustomed to take of evenings; that appellee pointed first to Mrs. Biddle, then to Mrs. Decker, then to himself, and motioned toward the route usually taken by them when they went on their usual evening walk, and that both he and Mrs. Biddle so understood the gestures. He testified that he told appellant why the gestures were made, and explained to her that he was motioning and indicating that they should take a walk. He also testified that after that appellant was very jealous of him and would watch him from the window as he went up-town; that if he met and talked to men she would ask what they talked about, and if he met and talked to a woman she would ask him if they were talking secrets and if he was meeting her; that she was constantly nagging him and making him miserable; that she would get angry at him, and if his answers were not what she thought they ought to be she would call him a "damned old liar," or would say, "Have you not got any sense?" or "You have no sense," and kept that up all the time until he left home.

Appellant testified that the first trouble that arose between her and her husband occurred in the early part of February, 1915, and that it was about his attentions to Mrs. Biddle. Appellant thought he cared too much for Mrs. Biddle, and that he never treated her right, as he had before that, after she told him what she had seen in the reflections of the piano; that thereafter he refused to go with her to meals at the place they boarded and was away from home at nights a great deal, and that before that he was never

279 — 20

away from home after night; that he then began persuading her to convey to him her property, and that on her refusal he refused to talk to her or to give her any attention and would not take her out riding in the automobile, as he had formerly done; that he threatened to leave her, and she told him she did not want him to go away; that he told her he was like a pauper and did not have sufficient means to support himself; that on his promise to treat her as he always had before their trouble she conveyed him the Star Theater building, but that he did not treat her better but continued his ill-treatment, until he finally left her in October, 1915, in the night time, without letting her know anything about his intention to leave, and never returned to Mt. Carmel until some time after this suit was brought by her; that he never wrote to her while he was gone and she did not know where he was; that he has never lived with her since; that he went to see her after he came back, and she asked him why he left and tried to get him to come back and live with her, and that he would not tell her why he left and would not agree to stay with her. Appellee admitted that she tried to get him to come back and live with her and made no denial of her charges of mistreatment. She is corroborated by twenty-two or more witnesses who were their close neighbors and most intimate friends. The substance of their testimony is that she simply idolized him and that they never saw her give him an unkind look or word at any time,—not even after they had noticed his coolness and indifference toward her. They also say that he was a model husband to her and seemed very much attached to her; that he gave her most considerate attention and always treated her with the utmost kindness before their estrangement in 1915. They all testified that they noticed his cool treatment of her; that he seemed morose and sullen towards her, would not go with her to her meals, would not wait on her and show her the many courtesies that he had been accustomed to do before that.

It is not necessary to further discuss the evidence on this line. The evidence clearly and conclusively shows not only that appellant was living separate and apart from appellee without fault on her part, but that she was willing and anxious for him to come back and live with her, and that he refused so to do although she had many times earnestly solicited him. Even if it be true, as testified to ' by appellee, that appellant was jealous without cause and nagged him and talked to him unbecomingly, which is denied by her, it clearly appears that he is responsible for their separation. She undoubtedly sincerely thought he was caring too much for Mrs. Biddle, and, instead of trying to convince her that she was in error, his conduct after the incident in their parlor was such as to confirm her in the belief that he was really infatuated with Mrs. Biddle and was anxious for an excuse to desert appellant on that account. As confirmatory of this we point to the fact that Mrs. Biddle finally left their home in June, 1915, and appellee was thereafter a frequent visitor at her home, which was only a few miles from Mt. Carmel, in Indiana. There is no evidence of unlawful intimacy with Mrs. Biddle on the part of appellee, but a proper regard for his wife and her feelings demanded of him not only words of explanation of his conduct towards Mrs. Biddle but consistent, convincing conduct on his part thereafter of a character to convince a reasonably prudent wife who was sincerely though unnecessarily aroused in her suspicions of infidelity on his part. He failed to do that, and that is his misfortune as well as hers.

Appellant raises four questions on this appeal: (1) The court erred in not awarding to her the amberola, an Edison musical instrument; (2) in refusing to decree that appellee transfer to her the seven shares of bank stock in his name, purchased with her funds; (3) in failing to set aside the deed to appellee to the Star Theater building;

and (4) in not decreeing further specific alimony for her maintenance and support.

Appellee having abandoned his wife without just cause and without her fault, the question of their property rights must be settled on that theory, and upon the further idea that the separation is to continue, inasmuch as he has refused to return to her on request. The amount, if any, to be allowed a wife for separate maintenance depends not only upon the question of the misconduct of the husband, but also upon the matter of their property and income, as well as their ages, health, past and present habits, social conditions and circumstances, and upon the further question whether or not there are children dependent upon one or both of them for support, and the amounts required therefor by each party. The amount of alimony to be allowed in a separate maintenance suit is to be determined in the same manner as in a case for divorce. (*Harding* v. *Harding*, 180 Ill. 481.) If the wife's income be insufficient to maintain her and to carry on the litigation, the husband's income should be required to contribute to her income as alimony and to bear the expense of the suit. If the income of the wife be sufficient to suitably support her there will ordinarily exist no reason for making an allowance for that purpose. The amount allowed a wife for separate maintenance or alimony varies from a sum sufficient to meet the actual wants and necessities of the wife, to a third and even a half of the income of the husband. Where they both have an income the method of computation of a proper allowance for her support and maintenance is to add the wife's annual income to her husband's, consider what, under all the circumstances, should be allowed her out of the aggregate, then from the sum so determined deduct her separate income, and the remainder will be her proper annual allowance. (*Harding* v. *Harding*, 144 Ill. 588.) It is also a rule of equity in such cases that the wife shall not be put in a worse condition by reason of her marriage,

the dissolution of which has been caused by her husband's willful misconduct. "Equity and good conscience require that the husband shall not profit by his own wrong, and that restitution shall be made to the wife of the property which she brought to the husband, or a suitable sum in lieu thereof be allowed out of his estate, so far as may be done consistently with the preservation of the rights of each, and also that a fair division shall be made, taking into consideration the relative wants, circumstances and necessities of each, of the property accumulated by their joint efforts and savings." (*Cole* v. *Cole*, 142 Ill. 19.) If the wife has no claim for separate maintenance or alimony except the existence of the marriage relation and the husband's fault, an allowance should be paid in money at stated intervals. If either or both have equitable rights in a piece of real estate or a chattel, other than through the marriage relation, by reason of their having purchased or contributed to the purchase or accumulation thereof, the court may decree equities to both in such property or award it to the one who purchased it outright or award other property in lieu thereof. (*Champion* v. *Myers*, 207 Ill. 308; *Robbins* v. *Robbins*, 101 id. 416; *Wilson* v. *Wilson*, 102 id. 297.) The sum and substance of the various holdings is that the wife shall not merely have what necessity demands but what complete justice requires, and that both the husband and the wife are first entitled to have their equities settled in the property held by both, jointly and separately. If all the property, or any part thereof, came to them by the sole efforts of the one or the other, then such party is entitled to have that property by the decree of the court, or some property the equivalent thereof, or money of the value thereof. After the equities of the parties in the property are adjusted, then the husband should be caused to pay or not to pay a further sum for support and maintenance in money payments at stated intervals, according to whether or not the wife is equitably entitled to further payment after a

consideration of all the facts that enter into a proper solution of that question.

We think the court erred in decreeing that appellee is equitably entitled to hold the amberola and the seven shares of bank stock as his property. There is some evidence in the record tending to show a gift of the amberola to him as a birthday present. While the evidence shows that the suggestion that it was to be a present from her to him was made by him when he bought it of the dealer, who carried it to their home and so informed her, still the court's finding that it was given to him by her as a birthday present is supported by the evidence. The bank stock was also taken in his name with her consent. She testified, in substance, that she was willing for him to have both the amberola and the stock as his own property so long as he lived with her and treated her properly as his wife but was unwilling for him to have them after he abandoned her. They were both valid and binding gifts and the court was warranted in so finding, but that does not necessarily settle the question of his right to them in this suit. It is undisputed that both the stock and the amberola were bought with her money. We think the rule ought to be applied that she must not be put in a worse condition by reason of her marriage and wife-like conduct that inspired her to make the gifts, and that she should be decreed those two properties as alimony, the title to which he has forfeited by reason of his abandoning her without just and reasonable cause. To decree otherwise would permit him to profit by his own wrong.

The evidence supports the decree that appellee is equitably entitled to hold the Star Theater building as his property. The appellee testified that he had placed more than $13,000 in the Bedell estate, the title to which was taken in the name of the father of appellant. He was corroborated by several witnesses, who testified to statements made by George T. Bedell in his lifetime that appellee had furnished him money. Appellant admitted in her testimony,

and stated to other witnesses, that some of appellee's money had been used in the purchase of the property but that she did not know how much. She insisted it was very much less than $13,000, and that was the point of difference between them. The property was voluntarily conveyed to him and the deed was accepted by him as a final settlement of his interest in the Bedell estate. He now claims that he is entitled to more money or property for services rendered by him to the Bedell estate and to appellant in caring for her property and renting it and collecting the rents. She claims that he promised to give her good treatment as a husband, as he had formerly done, if she would convey it to him, and that that formed the main consideration. The court's decree properly settled both contentions, and after fully considering all the evidence we affirm the decree that the deed should not be set aside and that appellee is equitably the owner of that property. We are also of the opinion that appellee is not equitably entitled to more property or money for his contributions to the purchase of her property or for services. The rents and income from the property were used for their joint support and were much the greater part of the money that contributed to such support.

The court properly decreed that appellant was not equitably entitled to a further specific money allowance for her maintenance and support. The evidence clearly discloses that her income from the property, and money specifically decreed to her and the other property, held by her in her own right, will amount to $220 per month or more, and that appellee's income from his property, including the Star Theater building, will be very little, if any, more than $110 per month, and he will have to pay her, by the provisions of the decree, $5049.12. He is at an age when his earning capacity is much limited. No children are dependent upon either of them for support. The income of appellant is amply sufficient to suitably support her. Under such circumstances no reason exists for making further allow-

ance to her as alimony. *Harding* v. *Harding,* 144 Ill. 588; *Converse* v. *Converse,* 9 Rich. Eq. 535; *Wright* v. *Wright,* 6 Tex. 29; *Marker* v. *Marker,* 11 N. J. Eq. 256.

The decree of the circuit court awarding the amberola and the seven shares of bank stock to appellee is reversed and is affirmed as to all other questions and the cause is remanded, with directions to enter a decree in conformity with the views herein expressed.

*Reversed in part and remanded, with directions.*

(No. 11384.—Judgment affirmed.)
THE PEOPLE *ex rel.* Nancy S. Tilden, Appellee, *vs.*
J. J. MASSIEON *et al.* Appellants.

*Opinion filed June 21, 1917.*