**Ann Bramson, Appellant, v. Leo Bramson, Appellee.**

Gen. No. 47,211.

First District, Third Division.

April 9, 1958.

Released for publication May 9, 1958.

Gariepy and Gariepy, of Chicago (Fred A. Gariepy, and John Spalding, of counsel) for appellant.

Rothschild, Hart, Stevens & Barry, of Chicago (John Paul Stevens, I. J. Berkson, David Silbert, and Arthur Altschul, of counsel) for Leo Bramson, defendant-appellee.

PRESIDING JUSTICE BURKE delivered the opinion of the court.

Ann Bramson and Leo Bramson were married on December 25, 1928. Two children were born of the marriage. The older, Joan, is married and lives in California. The younger, David, 20 years old, has been attending school in Colorado since September, 1955. When not in school he lives with his mother. The father voluntarily pays the son's college expenses and tuition and supplies him with a car owned by Bramson, Inc. The cost of operating the car is allowed as a business deduction to the corporation for tax purposes. Mrs. Bramson is 51 and Mr. Bramson is 56 years old. The parties separated in August, 1948, following a quarrel in Florida. She filed a complaint for separate maintenance, which on April 5, 1950, was voluntarily dismissed without prejudice to her rights.

Shortly thereafter she filed a complaint which sought to establish a one-half interest in a partnership operating a fashionable women's dress business known as "Bramson's." She amended her complaint by adding Count 2, which prayed for a decree of separate maintenance. Defendant answered and counterclaimed for a divorce. On November 9, 1953, a decree was entered finding that plaintiff had no partnership interest in Bramson's; that defendant was entitled to a divorce; and that the plaintiff should receive permanent alimony of $400 per month, plus $50 per week as support for David, and certain allowances for fees and expenses.

After the entry of the decree plaintiff filed a petition to vacate in which she pointed out that no evidence had been taken on the question of alimony since the submission of a master's report. She alleged that defendant's two sisters did not in fact have any interest in the business of Bramson's, and that if she were permitted to adduce evidence she would establish that defendant was the sole owner of the business from which he derived an income of $150,000 per year. The chancellor granted the motion to vacate the alimony and support provisions of the decree but overruled objections to the balance of the decree. He ordered that defendant make the alimony and support payments provided in the decree until the further order of the court, that the matter be set down for hearing on the issues of alimony, support money and attorneys' fees, and that defendant be given leave to file further pleadings. Further pleadings were filed in respect thereto. Plaintiff appealed from the balance of the decree. This court affirmed the decree as to the finding that plaintiff was not a partner in Bramson's and reversed the decree of divorce. It held that plaintiff was living separate and apart from defendant without fault and should be granted a decree of separate maintenance. The court noted that the

questions of alimony, child support and attorneys' fees were pending in the trial court. Bramson v. Bramson, 4 Ill.App.2d 249 (leave to appeal denied, 10 Ill.App.2d v.). An appropriate order was entered on the mandate and thereafter hearings were had before the chancellor to determine the reserved questions of alimony, child support and solicitors' fees. This is an appeal from those portions of an order entered February 4, 1957, which (a) fixed plaintiff's permanent alimony at $700 per month, (b) denied her support for the minor child of the parties, (c) did not make the alimony retroactive to November 9, 1953, when the erroneous decree was entered, nor require defendant to discharge indebtedness of $21,000 incurred by her since that date, and (d) allowed plaintiff solicitors' fees of $7,500 for legal services on the prior appeal, for opposing defendant's application for leave to appeal to the Supreme Court, and for work done in the trial court after the mandate was issued.

██ The first point advanced by the plaintiff is that the $700 monthly alimony bears no reasonable relationship to defendant's wealth and real income and should be increased to $2,000. Defendant replies that the allowance of alimony is a matter for the discretion of the trial court, and unless palpably erroneous the amount fixed should not be disturbed. The amount of alimony to be allowed in a separate maintenance suit is to be determined in the same manner as in a case for divorce. Decker v. Decker, 279 Ill. 300; Harding v. Harding, 180 Ill. 481. The income and the amount of property and resources of the husband are important factors in fixing alimony. Foote v. Foote, 22 Ill. 425; Bergen v. Bergen, 22 Ill. 187. In Herrick v. Herrick, 319 Ill. 146, the court said (151): "The principle on which alimony is given to the divorced wife is that the husband shall furnish his wife what shall be deemed a suitable support corresponding in degree with his pecuniary ability and social standing." Plain-

tiff asserts that the basic question is whether real income or reported taxable income is the basis for fixing alimony. The record shows that the chancellor gave appropriate consideration to the nature of defendant's property and income. The defendant proved that his property consisted of personal belongings and stock in the corporation. He owed $25,000. The defendant did not try to conceal his assets. All of the books and records were made available to plaintiff and her accountant.

■ Between December 1, 1941 and September 1, 1953, Bramson's was operated as a partnership by defendant and his two sisters, each of whom owned a one-third interest. The partnership was formed in 1941 for tax purposes. On September 1, 1953, Bramson, Inc. was organized and still operates the business. The defendant, since the formation of the corporation, has owned about 41 per cent of its stock. The transition of the business to corporate form was voluntary. The corporation operates six stores, five in the Chicago area and one in Palm Beach, Florida. The stores sell high-priced merchandise. Plaintiff did not offer any evidence to prove that considerations other than taxes entered into the decision to incorporate. While the business operated as a partnership the partners paid an income tax on the entire earnings of the business, even though a substantial portion of the earnings were necessarily retained in the business. While the partnership subsisted, defendant's real income and taxable income were identical. After the change to corporate form his returns disclosed only his salary as president. His share of undistributed profits of the corporation does not appear in the returns. Plaintiff states that if defendant had not joined in incorporating the business he would have reported an average annual taxable income of $61,870 for the 66 months since February 1, 1950. She asserts that defendant derives other personal economic advantages from the

business. Half of his $350 monthly rental at the Ambassador West Hotel is charged off as a corporate expense. He has the use of a Cadillac automobile also charged off as a corporate expense. He has a membership in the Bryn Mawr Country Club which cost $6,348. The expenses incident to that membership and his memberships in the Standard Club and Palm Beach Country Club are charged to the corporation. In one year these clubs cost nearly $12,000. Defendant testified that these expenses were incurred solely for the benefit of the business. Plaintiff states that since abandoning her, defendant's equity in the business has increased a quarter million dollars and that this increase in his net wealth is at the rate of about $35,000 per year on the average. She says that applying the rule of law applicable to the situation she should receive from one-third to one-half of his income or $2,000 per month at a minimum. She points to the rule of equity that the wife shall not be put in a worse position by reason of her marriage, the dissolution of which has been caused by her husband's willful misconduct, and that the husband shall not profit by his own wrong. Decker v. Decker, 279 Ill. 300, 309. She supports her argument by a table showing the taxes computed on stated amounts of alimony, the tax saving and the net cost to the defendant.

A certified public accountant employed by plaintiff testified that as a general rule partnerships as well as corporations have had to retain a portion of their earnings in the business. He made no specific comment or criticism of the amount of earnings retained in the business either while it operated as a partnership or since its incorporation. A consolidated balance sheet for the corporation and its wholly owned subsidiary as of July 30, 1955, shows an earned surplus of $129,095.06. The independent certified public accountant who prepared the exhibit analyzed the corporation assets and liabilities and expressed the opinion that it

93

would be unwise for the corporation to declare a dividend. The exhibit shows cash of $97,362.80, current liabilities $510,478.87 and long term debt of $353,-365.23. The assets include inventories of $415,585.04 and fixed assets of $644,881.56. Most of the other assets are in receivables. Defendant says that since inventories consist largely of expensive women's apparel, the styles of which change frequently, and the fixed assets include costly store fronts and leasehold improvements designed to maintain the luxury appearance of the stores, a change in market conditions would substantially impair the value of those assets in a very short time. The business is highly speculative. The corporation has borrowed $350,000 from a bank and up to $100,000 from a life insurance company for working capital. The record supports the chancellor's finding that the corporation operates a luxury business and requires the kind of expenditures for entertainment disclosed by the record. We do not believe that it is appropriate to discuss an amount proposed during negotiations for settlement of property rights.

The defendant has no source of income other than the business. The corporation has been able to borrow money for working capital, but the lenders have insisted on the customary restriction on payment of dividends or increases in officers' salaries. The chancellor found that after computing the tax consequences of an allowance of $700 per month to the plaintiff, and giving consideration to David's support and the payment of insurance premiums, defendant would retain only $780 per month. We are satisfied that the award made by the chancellor is within the range of discretion under the evidence.

The second point argued by the plaintiff is that the alimony should be made retroactive to November 9, 1953, when the erroneous decree for divorce was entered, or that the defendant should be required to

reimburse plaintiff for indebtedness incurred since that date. Section 1 of the Separate Maintenance Act (Par. 22, Ch. 68, Ill. Rev. Stat. 1957) provides that married women who without their fault live separate and apart from their husbands may have their remedy in equity for a reasonable separate maintenance while they so live or have so lived separate and apart. The chancellor refused to make the order retroactive to the date of the erroneous decree. Defendant should have been supporting plaintiff properly during the period subsequent to November 9, 1953. Under the circumstances presented the decree should be modified to require defendant to pay plaintiff the sum of $700 as permanent alimony from November 9, 1953, in reasonable installments to be determined by the chancellor. Defendant will be given credit for the payments of $400 per month made from December 1, 1953.

■ Plaintiff maintains that the chancellor erred in denying child support to her. Under the decree of November 9, 1953, reversed on the former appeal, she was granted $50 per week for support of David, the minor son, now 20 years old. He resided with plaintiff until September, 1955, when he went to college in Colorado. During vacations he lives with plaintiff. Defendant voluntarily pays David's schooling and incidental expenses and furnishes him an automobile for use at school, the expense of which is charged off as a tax deduction to the corporation. The chancellor denied plaintiff child support because defendant was voluntarily paying David's expenses at school. As he spends the Christmas, Easter and summer vacations with plaintiff, she feels that she must have suitable quarters to take care of him. We are of the opinion that the decree should be modified to require the $50 weekly payments during the Christmas, Easter and summer vacations effective February 1, 1957, when they were discontinued, until David reaches his majority. The defendant urges that since David was away

at college after September 1, 1955, defendant should be given credit for the $50 weekly payments made thereafter, except for the vacation portions of the period. The record does not show how many weeks David was away at school during the period from September, 1955 to February, 1957. The chancellor will ascertain how many weeks David spent with the plaintiff from September, 1955 to February, 1957, and give defendant credit for such $50 payments as were made to plaintiff while David was not residing with her.

Finally, plaintiff urges that the allowance of solicitors' fees should be increased to $30,000. Defendant counters with the statement that the allowance of a fee of $7,500 was excessive. The testimony introduced by plaintiff's counsel shows 85 hours spent in the trial court in preparation for appeal to the time that the record on appeal was filed; 344 hours in connection with the various aspects of the first appeal in this court; 60 hours on defendant's application for leave to appeal to the Supreme Court; and 118 hours in the trial court after remandment. Thus, according to the testimony, plaintiff's attorneys spent 178 hours in defending the petition for leave to appeal to the Supreme Court and for further proceedings in the trial court, and 429 hours in connection with the prosecution of the prior appeal. The defendant says that it is only for the 178 hours spent in defending the application for leave to appeal to the Supreme Court and in the trial court after remandment that the plaintiff has any statutory basis for seeking compensation from defendant, and that the $7,500 award gives the attorney more than $40 per hour for the time thus spent.

We are called upon to decide whether plaintiff should be awarded attorneys' fees for the services rendered in prosecuting her successful appeal. Section 15 of the Divorce Act (Par. 16, Ch. 40, Ill. Rev. Stat. 1957) reads in part: "In all cases of divorce the court . . . may require the husband to pay to the

96

wife . . . or may require the wife to pay to the husband . . . during the pendency of the suit such sum or sums of money as may enable her or him to maintain or defend the suit; . . . . The court may, in its discretion reserve the question of the allowance of attorney's fees and suit money until the final hearing of the case and may then make such order with reference thereto as may seem just and equitable, regardless of the disposition of the case. In case of appeal by the husband or wife, the court in which the decree or order is rendered may grant and enforce the payment of such money for her or his defense and such equitable alimony during the pendency of the appeal as to such court shall seem reasonable and proper." This section is incorporated by reference as a part of the Separate Maintenance Act. (Par. 23.2, Sec. 4, Ch. 68, Ill. Rev. Stat. 1957.) The defendant maintains that attorneys' fees may not be allowed for prosecuting an appeal in this kind of a case. He insists that while the statute expressly empowers the chancellor to award fees for the defense of an appeal, there is no comparable authorization for prosecuting an appeal, citing Buehler v. Buehler, 373 Ill. 626-28; Arndt v. Arndt, 399 Ill. 490; Barnett v. Barnett, 341 Ill. App. 26; Bissekumer v. Bissekumer, 325 Ill. App. 257; and Goodman v. Goodman, 329 Ill. App. 444, (Abst.).

■ It will be observed that Sec. 15 of the Divorce Act grants authority to the chancellor at the final hearing of the case to allow such attorneys' fees as may seem just and equitable for services rendered to maintain or defend the suit. The question presented is whether the last sentence of this section, as quoted, is intended as a limitation upon the power to allow fees for services rendered in the case prior to the final hearing. The sentence empowers the chancellor to make a prospective allowance to the successful spouse to defend an appeal. It does not authorize such pro-

spective allowance to the defeated spouse to prosecute an appeal. In Riddlesbarger v. Riddlesbarger, 348 Ill. App. 31, 36, the court said that the obvious purpose of the disputed sentence "is to protect the spouse in whose favor a decree had been rendered from being subjected to the hardship of an appeal during which payments were suspended and expenses would be incurred for defending the litigation." There is not a word in Section 15 indicating that the legislature intended to prohibit compensation for appellate services in procuring the reversal of an erroneous decree at the final hearing of the case after the reversal has been effected.

The sentence on which the defendant relies grants permission to the chancellor to allow fees to the successful spouse while the appeal is under consideration in the reviewing court and specifies when compensation may be allowed. If the successful spouse chooses, the application for such fees may be delayed until the case has been returned to the trial court. (Riddlesbarger v. Riddlesbarger, supra.) The disputed sentence does not specify the nature of divorce services that are compensable. That is done elsewhere in the section, where it declares that such fees are allowable in divorce proceedings "to maintain or defend the suit" without any limitation or restriction upon compensability because of the court in which the services are performed. An appealing spouse seeking separate maintenance and resisting divorce in a reviewing court is both maintaining and defending marital litigation. Section 74 of the Practice Act, providing for appellate review of final orders, judgments and decrees (Sec. 74, Ch. 110, Ill. Rev. Stat. 1957), states that the review shall be designated an appeal and constitutes a continuation of the proceeding in the trial court. The trial court in divorce and separate maintenance matters may fix alimony and attorneys' fees at the final hearing of the case. In the instant case the hearing on

98

permanent alimony and attorneys' fees was held pursuant to a reservation of jurisdiction in the decree that had granted plaintiff separate maintenance and dismissed defendant's counterclaim for divorce. Section 15 empowers the trial court to make the allowance of fees at the final hearing of the case and at that time to allow fees for the services that have enabled the party to maintain or defend the suit. We are of the opinion that under Section 15 the chancellor at the final hearing had power to allow attorneys' fees for services in the entire case, including the services rendered on the prior appeal, which was a part of the case. The fact that the chancellor may in certain circumstances allow fees to defend an appeal before the final hearing and before services are rendered is not a limitation on what services may be compensated at the final hearing. The disputed sentence affects the time when the particular allowance may be made.

In Holmstedt v. Holmstedt, 383 Ill. 290, a divorce awarded the husband was set aside on the wife's appeal with directions to allow her separate maintenance. The court said (300): "Since there is uncontroverted proof that she is in ill-health and under a doctor's care, she should be allowed her reasonable support and maintenance and reasonable counsel fees for the litigation in the trial court and for this appeal, to be fixed by the court." In Walters v. Walters, 341 Ill. App. 561, the wife appealed from an order modifying a divorce decree. The court in reversing and remanding included a direction "to conduct a hearing as to the reasonable value of the services rendered by plaintiff's attorneys from August 1, 1947, to date, and to enter an order upon the defendant to pay to plaintiff as and for her attorneys' fees such sum so found to be due." On further review, the Supreme Court (409 Ill. 298) affirming, said (305): "Had the defendant complied with the terms of his agreement plaintiff would not be in court. It was his refusal to carry out

99

its provisions which forced her to resort to the courts for relief. In such a situation the plaintiff should not be without her reasonable attorney's fees, a right accorded to her under the statute, and the referral by the Appellate Court for an order therefor was proper." In Riddlesbarger v. Riddlesbarger, 336 Ill. App. 226 (abst.), an award of $30,000 in fees to the wife's counsel was affirmed on appeal by the husband. The compensation for appellate services there approved was for reversal of erroneous orders on appeal prosecuted by the wife. See 324 Ill. App. 176.

There seems to be no conceivable reason why the legislature should want to deny compensation for services in reversing an erroneous and therefore unjust decree. The defendant states that if the statute authorizes the allowance of attorneys' fees for the successful prosecution of an appeal, it also authorizes the allowance of fees for the unsuccessful prosecution of an appeal. The issues presented do not require us to say what position we would take in a case wherein an unsuccessful appellant sought attorney's fees. In our opinion the cases cited by the defendant do not support his contentions. In Arndt v. Arndt, 399 Ill. 490, the court held that it was error to grant defendant fees to defend an appeal in an annulment case. In Buehler v. Buehler, 373 Ill. 626, the court allowed attorney's fees for services on the appeal taken by the wife. This was held to be erroneous on the ground that the allowance was not within the jurisdiction of the Appellate Court and that the allowance could be made only in the trial court while the appeal was pending. If the plaintiff's attorney were asking us to fix compensation for the instant appeal, the Buehler case would be relevant. In the Goodman case the wife appealed from an order reducing child support and a further order which denied her an allowance of fees to prosecute the appeal from the first order. The court held that Section 15 does not authorize an allowance to prose-

cute an appeal. In Barnett v. Barnett, supra, an order allowing the wife fees for her appeal after reversal of an erroneous order was affirmed. The Seeger v. Seeger, 154 Ill. App. 38; Balswic v. Balswic, 179 Ill. App. 118; Shaffer v. Shaffer, 219 Ill. App. 200 and Bissekumer, supra, cases hold that an anticipatory allowance will not be made to a spouse to prosecute an appeal from an adverse decree.

After careful consideration of the testimony we conclude that the amount of attorneys' fees should be raised to $12,000 to be paid in reasonable installments as determined by the chancellor. The order of the Superior Court of Cook county is reversed and the cause is remanded with directions to enter an order consistent with this opinion.

Order reversed and cause remanded with directions.

FRIEND and BRYANT, JJ., concur.